ELIZABETH SCOTT *v.* PHILIP GAMBLE and wife.

1. The doctrine as laid down by Sir Edward Sugden, in reference to the incapacity of a person, in the exercise of his duty as trustee, becoming the purchaser of the property of his *cestui que trust*, has always been recognized as the law in New Jersey.

2. An executor selling land, in the execution of a trust expressed in a will, either at public or at private sale, or under an order of the court, cannot, either directly or through the agency of another, become the purchaser, or interested in the purchase of such sale.

3. The rule, as recognized by Chancellor Kent, in *Davoue* v. *Fanning and others*, 2 *Johns. Ch. R.* 252, adopted in the broadest extent.

4. Where one intermarried with a widow, who was the executrix of her late husband, and who had proved and taken. upon herself the execution of the will : *Held*, that by his marriage he assumed all the responsibilities which devolved upon his wife as executrix, and the rule as stated above would be applicable to him.

5. But where it appears that the complainant received the purchase money with a full knowledge of the facts, and deliberately ratified the sale, *with a knowledge of the fact, which would avoid the sale*, it is a bar to any relief which this court might otherwise have afforded.

6. Where a bill was filed against defendants *as trustees*, and as *the representatives* of a testator, in their *representative characters*, and the prayer of the bill was in conformity thereto, the complainant is entitled to an account in that aspect only.

Bill filed on the seventeenth day of May, 1849. The bill states that Leonard Scott, late of the city of Trenton, and county of Hunterdon, now county of Mercer, duly made and published his last will and testament in writing, bearing date on the fifth day of September, in the year of our Lord one thousand eight hundred and thirty-six, which was executed and attested as by law is required, for passing real estate by devise, and thereby, after directing all his just debts to be paid, and after giving to his wife, Lucretia, all his household furniture and three hundred dollars in money, did further devise, as follows, to wit : " I give and devise unto my four children, namely, Leonard M. Scott, Henrietta Ann Scott, Elizabeth Scott and Amanda Scott, each one lot of land, being part of my lot of land and real estate, situate

in the city of Trenton aforesaid, to be severally laid off agreeably to the annexed plan; that is to say, (1) unto the said Leonard M. Scott, in said plan, part called lot No. 1, (one,) fronting one hundred and two feet, more or less, on the east side of Greene street, and twenty-three feet on the southerly side of Academy street, and bounded by a lot of Thomas Ryall, lot No. 2 and others, with my dwelling-house and other buildings thereon; (2) unto the said Henrietta Ann Scott lot No. 2, (two,) fronting eighty-eight feet on said Academy street, and extending from thence, at right angles thereto, southerly, the same width, by and between said lot No. 1 and lot No. 3, to the rear line, or land of Samuel S. and Thomas J. Stryker and others; (3) unto the said Elizabeth Scott lot No. 3, (three,) fronting eighty-eight feet on said Academy street, and extending from thence, at right angles thereto, the same width, by and between said lot No. 2 and lot No. 4, to the said rear line, or land of said Stryker and Philemon Dickinson; and (4) unto the said Amanda Scott lot No. 4, (four,) fronting eighty-eight feet on said Academy street, and extending from thence, at right angles thereto, the same width, by and between said lot No. 3 and lot No. 5, to said rear line, or said land of Strykers and Dickinson, and the African Burying, to have and to hold in severalty as aforesaid, and to their heirs and assigns respectively forever; but, nevertheless, to be in the use and enjoyment of my said wife, to wit, the said lot No. 1, with the buildings thereon, during her natural life, and to be in lieu of dower in all my real estate, and also the like use of the said lots Nos. 2, 3 and 4, until my said daughters shall respectively arrive at the age of twenty-one years; but in case any of my said children should depart this life before he, she or they should attain such age, and without lawful issue, then I give and devise such lot or lots to the survivors or survivor of them, equally to be divided, and to his, her or their heirs and assigns respectively, forever.

"4th. I direct and authorize my executrix herein named to sell and dispose of, at her discretion, all the residue of my said lot of land and real estate, in said plan called lot

No. 5, (five,) and situate in said city, bounded by said Academy street, Montgomery street, the Friends' Burying Ground and said lot No. 4, for the best price that may be obtained therefor, and to execute good and sufficient title or titles for the same in fee simple, and the net proceeds of such sale or sales to put and keep out at interest on real security, free of encumbrance, and the interest thereof I give to my said wife, until my youngest child living shall be of age, and then the principal sum I give to my said wife and four children, or the survivors of them, equally to be divided.

" 5th. I give and bequeath unto my said three daughters, Henrietta Ann Scott, Elizabeth Scott and Amanda Scott, the sum of two thousand dollars, meaning the principal sum mentioned in a certain bond which I hold, together with the mortgage securing the payment and interest thereof, and the policy of insurance as assigned to me ; and in case the said sum, or any part thereof, should be paid, the same again to be put and kept at interest, on like security, by my executrix ; but the interest thereof, always, I give to my said wife, until my youngest child living shall attain the age of eighteen years, and the said two thousand dollars to be equally divided amongst my said three daughters, or the survivors of them.

" 6th. I give unto my said wife all the residue of my estate.

" 7th. I nominate and appoint my said wife, Lucretia Scott, executrix of this my last will and testament, and in whose care and protection I leave my said children, and I hereby desire and enjoin upon her to educate and support them during their minorities respectively, in a decent and suitable manner, for which purpose it is my intention to provide her the means, as well as for the support of herself, but the same, or any bequest herein given her, to be in no wise subject to the control, support or liabilities of any future husband, (in case she should marry again,) to the prejudice of my said children, but all powers to remain in her, notwithstanding such coverture ; and in case of her decease

before my youngest child living shall be of age as aforesaid, then I give all the rents, uses and interest of my real estate, and money put out, as given to her, unto such person as she may appoint, by will or otherwise, or in default thereof, to the oldest of my said daughters living, to be applied to the support and education of my said children in like manner as herein I have provided and desired my wife to support and educate them, as in and by this said will, reference being thereto had, will more fully and at large appear."

That the said testator, Leonard Scott, departed this life on or about the first day of September, in the year of our Lord one thousand eight hundred and thirty-six, without having revoked or altered his said will, and leaving complainant and Amanda Scott, Henrietta Scott and Leonard Scott, his children, him surviving. And, therefore, the said Lucretia Scott, the executrix of the said will named, duly proved the said will, and undertook the burthen of the execution thereof, and by virtue thereof possessed herself of the personal estate and effects of the said testator, to an amount greatly more than sufficient to pay and satisfy his funeral expenses, just debts, and also entered into the possession of the freehold and leasehold estates of the said testator, or into the receipt of the rents and profits thereof.

That at the time of the death of her father, the said testator, the complainant was an infant, under the age of twenty-one years, and that she did not arrive at the age of twenty-one years until the fourteenth day of April, in the year of our Lord one thousand eight hundred and forty-five.

That the said Lucretia Scott, executrix as aforesaid, on or about the first of February, one thousand eight hundred and forty-one, married one Philip Gamble, and that after her marriage with the said Philip Gamble, the conduct of the said Lucretia, the said executrix, towards complainant and the other legatees, became changed, and a course of proceedings adopted to place as much of the property of the said testator within the power and under the control of the said Philip Gamble, as possible, and to the detriment of complainant and the other children of the said testator

That with the view of benefiting the said Philip Gamble and the said Lucretia, at the expense of complainant and her sisters, the said Lucretia, by virtue of the discretion reposed in her by the said will of the said testator, pretended to sell and dispose of all the residue of the lot of land and real estate, in said plan called lot No. 5, (five,) and situate in the said city of Trenton, bounded by said Academy street, Montgomery street, the Friends' burying ground and lot No. 4.

That the said Lucretia, the executrix as aforesaid, instead of selling the said real estate fairly and *bona fide* for the best price that could be obtained for the same, entered into a conspiracy or agreement with the said husband, Philip Gamble, to enable him to obtain the said real estate at a sum much below its real value, and to have the title to said real estate for the benefit of the said Philip Gamble and his said wife, Lucretia, the said executrix. She, the said Lucretia Gamble, as the executrix of the said testator, Leonard Scott, united with her said husband, Philip Gamble, in a deed, whereby, for the pretended consideration of the sum of eight hundred and thirty-one dollars, recited to have been paid by one Thomas Gordon to the said Philip Gamble and Lucretia, his wife, executrix as aforesaid, they conveyed to the said Thomas Gordon, on or about the twentieth day of July, in the year of our Lord one thousand eight hundred and forty-three, all the said real estate above mentioned, and described as lot No. 5, (five,) except the buildings thereon, in fee simple.

That although the said deed of conveyance bears date on the twentieth day of July, in the year aforesaid, yet that the same was not acknowledged until the twenty-fifth day of the same month, when it was acknowledged before Stacy G. Potts, esquire, as a master in chancery, and who is also the only subscribing witness to the said deed.

That on the same twenty-fifth day of July, in the year aforesaid, the said Thomas Gordon re-conveyed the same premises back to the said Philip Gamble, for a consideration recited in the said deed to be the sum of eight hundred and

two dollars, and that the said last-mentioned deed was also acknowledged before the said Stacy G. Potts, Esq., on the same day, and who was also the only subscribing witness to this deed. The bill charges these deeds to be mere contrivances of the said Philip Gamble and Lucretia, his wife, who was executrix of the said Leonard Scott, to evade that salutary rule of law and equity which prohibits an executrix purchasing any of the estate which she is directed under the will to sell, and that the said deeds are fraudulent and void as against her.

That no money was paid by the said Thomas Gordon to the said Philip Gamble and Lucretia Scott, at the executing the said deed so made to him as aforesaid; and that no money was paid by the said Philip Gamble to the said Thomas Gordon, at the time of the execution of the said deed from the said Thomas Gordon to the said Philip Gamble, on account of the consideration money mentioned in said deed.

That upon the said sale so made by the said Thomas Gordon to the said Philip Gamble, the said Philip Gamble executed a mortgage on said premises to said Thomas Gordon, for the sum of eight hundred and two dollars and fifty cents, to secure the payment of three several bonds, conditioned for the payment of two hundred and sixty-seven dollars and fifty cents each, and two of which said bonds were delivered to Caleb S. Green, Esq., for the benefit of complainant and her sister, Amanda Scott; and that the said Caleb S. Green afterwards collected the said two bonds, and paid over the amount thereof to complainant and her said sister Amanda, respectively, and the remaining bond the said Philip Gamble delivered to Messrs. Titus & Bro., of the city of Trenton, in payment or discharge of a store account due to them by the said Philip Gamble.

That the said sale so made by the said Philip Gamble and Lucretia, his wife, executrix of Leonard Scott, to the said Thomas Gordon, was not a sale for the best price that could have been obtained for the same, and that they well knew that a much larger sum could have been obtained for the

same upon a fair public sale thereof, than the said sum of eight hundred and thirty-one dollars; and that the said lot number five was, at the time of the said sale to the said Thomas Gordon, worth the sum of fifteen hundred dollars.

That the said Lucretia Gamble told the complainant that before the said sale, that Mr. Titus had offered her fifteen hundred dollars for said lot, but that she, the said Lucretia, would rather that Gamble should have the lot; and that complainant replied that she would rather that her mother should keep the lot and not sell it.

That the said Philip Gamble has, since the said pretended sale to said Thomas Gordon, repeatedly admitted that he, Gamble, had bought the said lot at the said public sale, and not the said Gordon; and upon the said Philip Gamble's being told by a person, who was able to purchase said lot, that if he had known it would have gone off so cheap, he would have purchased said lot, the said Philip Gamble replied no, you could not have bought it, for Gordon bought it for me.

That the said Thomas Gordon never took possession of the said lot number five, under his said deed, but that the same was, at the time of the said sale, in the possession of the said Philip Gamble, and remained in his possession, or the possession of his tenants, ever since, with the exception of a very small part thereof, which he conveyed, on or about the sixth of June, in the year of our Lord one thousand eight hundred and forty-eight, to one William C. Beatty, for the consideration of four hundred dollars, and took a mortgage on the same for the consideration money, or a great proportion thereof.

That the said Philip Gamble hath, from the time of the pretended sale to the said Thomas Gordon, always received the rents, issues and profits of the said premises, with the exception of that part thereof so sold to said William C. Beatty, from the time of the said sale to said Beatty.

That the said Lucretia Gamble, executrix of said Leonard Scott, did not, on the sale of said lot number five, put out

at interest on real security, the net proceeds of the sale of the said lot number five, but wholly neglected so to do.

That on or about the first day of May, in the year of our Lord one thousand eight hundred and forty, and while complainant was a minor, and of the age of only eighteen years, the said Lucretia Gamble sent the book of complainant, in which was entered the amount of money which was deposited to her credit in the Savings Fund of Philadelphia, to the Saving Fund Institution at Philadelphia, for the purpose of drawing out the moneys to which she was entitled, but the officers of the said institution declined to pay the said money to the said Lucretia, and the said Lucretia thereupon directed and requested complainant to go to Philadelphia and draw out of said Saving Fund Institution the amount of money she had there deposited to her credit, and persuaded and induced her to loan the said money, amounting to the sum of two hundred and eighty-seven dollars, under pretence that she desired to improve the said lot number five, by building thereon. And complainant believing that her mother, as the executrix of her said father, wished to improve said lot number five, for the mutual benefit of herself and her children by the said testator, loaned to her the said sum of two hundred and eighty-seven dollars, and the said Lucretia expended the same in the purchase of materials for building two dwelling-houses on said lot number five, and in building the same; and the said Lucretia Gamble and her said husband, Philip Gamble, after the said two houses were built on said lot, took possession of said houses, and rented them out and received the rents thereof, and they still claim possession of said houses; and the said Lucretia Gamble and Philip Gamble have not, nor hath either of them, returned her the money obtained from her by said Lucretia, in the manner aforesaid.

That the said Leonard M. Scott and Henrietta Ann Scott, two of the legatees in the said will of the said testator named, departed this life under age, and without issue, leaving the complainant and her said sister, Amanda Scott, them

surviving, and thereby the legacies in said will bequeathed to said Leonard M. Scott and Henrietta Scott, vested in the said Amanda Scott and complainant.

The bill further charges that the said sale made by the said Philip Gamble and Lucretia Gamble, executrix of Leonard Scott, to the said Thomas Gordon, was not *bona fide*, and was not for a full and fair consideration, and was not for as much as could have been obtained therefor, and that the said lot of land might have been sold for a much larger amount of money, but for the default, neglect, and contrivance adopted by the said Philip Gamble and Lucretia Gamble, to enable the said Philip, through the instrumentality of the said Thomas Gordon, to obtain the title to said lot, for a little more than half its real value.

And that the said Thomas Gordon only acted as the agent of the said Philip Gamble and Lucretia, his wife, to enable them to obtain the title to said lot by indirect means, because the law would not allow the said Philip Gamble and Lucretia, his wife, executrix of Leonard Scott, deceased, to sell the said lot to the said Philip Gamble.

The bill prays that an account may be taken of the personal estate and effects of the said testator, which have come to the hands or use of the said Philip Gamble and Lucretia, his wife, executrix of said Leonard Scott, and that an account of the rents, issues, and profits of lots Nos. 2, 3, 4, and 5, in said will mentioned, which have come to the hands of said defendants, or either of them, or but for the willful default or neglect of the said defendants, might have been received by them, or one of them, from the time complainant arrived at the age of twenty-one years.

And that the said Philip Gamble and Lucretia, his wife, may be decreed to pay to the complainant the money borrowed of the complainant, as aforesaid.

And that the said Philip Gamble and Lucretia, his wife, executrix of Leonard Scott, may be decreed to account for so much of lot No. 5 (five) as the said Philip Gamble has sold to the said William C. Beatty, and that the residue of the said lot may be sold under the order of this honorable court,

and the proceeds thereof distributed, according to the terms and directions of the said will of the said testator, or that it may be referred to a master, to ascertain what was the fair value of the said lot No. 5 (five) at the time the said deed was made to the said Thomas Gordon, and that the said defendants may be decreed to account to the complainant for her just distributive share of said value, according to the terms and directions of the said will of the said testator.

Philip Gamble and wife, by their answer, admit it to be true that the said Leonard Scott, late of the city of Trenton, in the State of New Jersey, did, shortly before his death, and at or about the time mentioned in the said bill of complaint, duly make and publish his last will and testament in writing, to such purport or effect as is in the said bill of complaint in that behalf alleged, and that the same was executed and attested in such form as is required by the laws of this state.

And they admit it to be true that the said Leonard Scott, the said testator, departed this life at or about the time in the said bill mentioned, without having revoked or altered his said will, leaving the said complainant and Amanda Scott, Henrietta Scott and Leonard M. Scott, his children, him surviving; and that soon after the death of the said testator, the said Lucretia Gamble, one of the said defendants, then Lucretia Scott, the executrix in the said will named, duly proved the said will as in the said bill of complaint is set forth, and took upon herself the execution thereof, and possessed herself of the personal estate and effects of the said testator, and entered into the possession of the real estate of the said testator, which real estate consisted of lots of land situate in the said city of Trenton, mentioned in the said will of the said Leonard Scott, deceased, and designated in the said will and the said bill of complaint as lots No. 1, 2, 3, 4 and 5; and that the personal estate of the said Leonard Scott, deceased, which came to the hands of the said Lucretia, as executrix of the said will, was amply sufficient

to pay the funeral expenses, debts and legacies of the said testator.

That at the time of the death of the said Leonard Scott, the said complainant was an infant, and that she did not arrive at the age of twenty-one until at or about the time in the said bill of complaint in this behalf alleged.

That they were intermarried as is by the said complainant averred, but not at the time in the said bill of complaint mentioned, but on the sixteenth day of August, in the year of our Lord one thousand eight hundred and forty. But they expressly deny that after their intermarriage, the conduct of the said Lucretia, the said executrix, became or was. changed in any respect towards the said complainant or to the other legatees, or that any course of proceeding adopted, or any act done by these defendants, or either of them, to place the property, or any part of it, of the said testator, the said Leonard Scott, within the power, or under the control of the said Philip Gamble, to the detriment of the said complainant, or the other children of the said testator.

They admit that the said Lucretia Gamble, the said executrix, by virtue of the power vested in her by the said will of the said testator, on or about the twentieth day of July, in the year of our Lord one thousand eight hundred and forty-three, sold the said lot of land designated as lot No. 5, and described in the said bill of complaint; but they absolutely deny that the said sale was made with a view of benefiting these defendants, or either of them, to the prejudice of the said complainant and the other legatees, or any or either of them, or that these defendants entered into any conspiracy or agreement so as to enable the said Philip Gamble to obtain, directly or indirectly, the said lot of land for a less sum than its real value, or into any conspiracy or agreement in regard to the said sale; and these defendants further absolutely deny that the said sale was a pretended sale, but with an honest intention of making the said lot bring as much as possible; that the said sale was advertised for more than two weeks prior to the time of the said sale,

in the *Emporium and True American*, a newspaper at that time printed and published in the said city of Trenton, and at the time so advertised was sold at the inn of Charles Howell, in the said city, which was the place designated in said advertisement; that the said sale was attended by a large number of persons; that the said lot, with the purpose of getting a large price, was divided into two parcels, both of which were cried off at public auction at the said time and place, by Joseph A. Yard, at that time an auctioneer in the said city; that several persons bid for the said lots, but Thomas Gordon being the highest bidder for each of the same, they were publicly struck off to him. And these defendants further expressly say that the said lot No. 5 was thus *bona fide* sold to the said Thomas Gordon for a full and fair consideration, and for the best price, according to the best of the knowledge, information, hearsay, and belief of these defendants, that could be obtained for the same; and that no better price, by any means known to these defendants, could have been obtained for the said lot; and that the said Philip Gamble did not request the said Lucretia to sell the said lot No. 5, or give any directions how the said sale should be made, or in any manner interfere with the same; but that the said sale was made at the instance of the said Thomas Gordon, who had been for a long time before the death of the said Leonard Scott, the confidential friend and man of business of the said Leonard Scott, and who, since the death of the said Leonard Scott, had held in his hands, and under his control, the entire personal estate of the said testator, and continued to hold the same until its final distribution according to the provisions of the said last will. And these defendants further deny that it was understood between them, or between them and the said Thomas Gordon, that he, the said Thomas Gordon, should buy the said lot of land for these defendants, or either of them.

That it was not by his coercion, procurement, solicitation or advice that the said sale of the said lot No. 5 was made, and that he did not know that the same was intended to be

sold, until he was casually informed that an advertisement for the sale of the same was in the newspaper aforesaid, and that he believes the said advertisement was put into the said paper by the said Thomas Gordon ; that upon being informd of the fact of the said advertisement, he immediately called on the said Thomas Gordon in reference thereto, and was informed by the said Thomas Gordon that the will of the said Leonard Scott (which said will, at that time, he, the said Philip Gamble, had never seen,) required the said sale to be made, but that he, the said Gamble, although he could not be permitted by law to buy the said premises, would have the privilege of removing the houses which he had erected thereon.   And the said Philip Gamble absolutely denies that he employed the said Thomas Gordon to purchase the said lot, or any part thereof, for him, the said Philip Gamble, or that there was any understanding between them to that effect, but on the contrary thereof, when the said Gamble applied to him, said Gordon, on the day of the said sale, to permit him to take, the said Gamble to take, the said lot at the price for which the same had been struck off, he, the said Gordon, refused so to do ; and that it was not until the following day that he accepted said offer.   And the said Philip Gamble expressly denies that he has ever admitted that he, and not the said Gordon, bought the said lot at the said public sale; and that he has no recollection of any person saying to him that if he (said person) had known said lot would have gone off so cheap, he (said person) would have purchased said lot ; and that if any such remark was ever made to him, the said Gamble, that he did not reply, or say, " No, you could not have bought it, for Gordon bought it for me," or any reply in language of similar import.

That they have never had any knowledge, information, or belief that the said lot No. 5, at the time of the said sale, was worth more than the sum of eight hundred and thirty-one dollars—the price for which it was sold ; and that no person ever offered the sum of fifteen hundred dollars, or any other sum, for the said lot No. 5 ; and the said Lucretia Gamble expressly denies that she ever told the said

complainant, or any other person, that any person had offered her fifteen hundred dollars, or any other sum, for the said lot No. 5, and that she did not say that she, the said Lucretia, would rather the said Gamble should have the said lot, or words to that effect.

They admit it to be true that, at the time mentioned in the said bill of complaint in this behalf, they executed a conveyance for the said lot No. 5 to the said Thomas Gordon, and that Stacy G. Potts, esquire, is the sole witness to the said deed, and that the date of the acknowledgment is also correctly set forth by the said complainant; and they further admit that at the same time the said Thomas Gordon executed a conveyance of the same premises to the said Philip Gamble, for the same consideration for which he had purchased the same, after deducting the expenses of the said sale; and that the said last-mentioned deed was also acknowledged before the said Stacy G. Potts, esquire, he being also the witness to the same, on the day and year set forth in this respect in the said bill; and they admit that, at the time of the sale, no money was paid by the said Thomas Gordon or the said Philip Gamble, but the whole of the purchase money was secured by the said Gamble giving his three several bonds, and a mortgage, in the amount and in the manner set forth in the said bill, which said bonds and mortgage were drawn by the said Thomas Gordon, and were delivered to him by the said Gamble for the benefit of the said estate, and were so held by him, he being the agent of the said Lucretia, the said executrix, and having in his hands all the moneys left by the said Leonard Scott; and that afterwards two of the said bonds were applied by the said Thomas Gordon, as in the said bill of complaint is mentioned, to the payment of the shares in lot No. 5 of the said complainant and her said sister Amanda; and that the third bond, which, under the said will of the said Leonard Scott, was the property of the said Lucretia Gamble, was given to the said Messrs. Titus & Brother, in part payment of a store account incurred for family expenses, the greater part of which said account had occurred .

before the said intermarriage of these defendants, and a considerable part was for dress and other things provided for complainant and her sisters, at their request; and thus, as these defendants say, the net proceeds arising from the sale of lot No. 5 were put out at interest on real security, in compliance with the said will, and that the said bonds have since been fully paid and discharged by the said Philip Gamble. And they further altogether deny that the said deed from them to the said Thomas Gordon, or the said deed from the said Thomas Gordon to the said Philip Gamble, or either of them, were contrivances of theirs, or either of them, or of any other person, to evade the rule of law and equity which prohibits an executrix from purchasing any of the estate which she is directed under the will to sell, or of any other rule of law or equity.

They admit it to be true that the said Thomas Gordon never took possession of the said lot No. 5, but that ever since the said sale the said lot has been in the possession of the said Philip Gamble, with the exception of that certain portion sold by the said Philip Gamble to the said William C. Beatty, for the consideration and in the manner in the said bill of complaint alleged, and that he, the said Gamble, has always received the rents and profits of the said lot No. 5 since the said sale, with the exception of the rents of the part sold as aforesaid to the said William C. Beatty.

That at the time of the sale of lot No. 5, the said complainant, Elizabeth Scott, was in the twentieth year of her age, and that although she was living at home with the said defendants, she was not under the influence or control of her said mother, and was well acquainted with her rights under the said will of her said father; and that before the time of the said sale she, the said complainant, had employed legal counsel, and cited her mother, the said Lucretia, into the Orphans' Court of the county of Mercer, and, on the first day of July, in the year of our Lord one thousand eight hundred and forty-three, (the same being the month and year in which the sale took place,) obliged her said mother to give security for the faithful and due performance

of her duties as executrix, and her trusts under the said will, and that at the time the said complainant knew the manner in which the said sale was conducted, and the price for which the said lot No. 5 sold, and that the said lot was struck off to the said Thomas Gordon, who thereafter conveyed it to the said Philip Gamble; and that the said complainant further knew that the said Thomas Gordon held one of the said bonds (given as aforesaid by the said Gamble) in trust for her, and as her share of the proceeds of the said sale of the said lot, and that she was entirely satisfied therewith. That on or about the twentieth day of March, in the year of our Lord one thousand eight hundred and forty-seven, long after the said complainant and the said Amanda Scott had arrived at full age, they voluntarily and with a full knowledge of all the facts and circumstances of the said sale, received and accepted the said two bonds and the mortgage aforesaid, securing the payment of the same by assignment from the said Thomas Gordon, in full satisfaction and discharge of their respective shares in the proceeds of the sale of lot No. 5, and in the presence of Caleb S. Green, esquire, who, before that time, had been their guardian, and was then their legal adviser, severally signed a receipt or acquittance for their said respective shares, in writing, bearing date the day and year last aforesaid.

The defendants pray that they may have the same benefit from the said settlement as though they had pleaded the same, in bar of the said claim of the said complainant in this behalf set forth in the said bill of complaint.

And the said Lucretia Gamble, one of the defendants, in further answering, says that she has no recollection of ever sending the book of the said complainant, in which was entered the amount of money deposited to the said complainant's credit, in the Safety Fund of Philadelphia, or any other book of the said complainant, or that she ever directed or requested the said complainant to go to Philadelphia and draw out the said money from the said saving fund; and this defendant expressly denies that she ever received the

sum of two hundred and eighty-seven dollars, or any other sum of money from the said complainant as a loan, under pretence that she desired to improve lot No. 5, or for any other purpose, or under any other pretence whatsoever.

The defendants further say that they absolutely deny that the said buildings, or either of them, put up on lot No. 5, were put up in part or in whole with any money borrowed or derived from the said complainant, but on the contrary thereof, that the said buildings were erected and paid for by the said Philip Gamble, out of his own private estate.

They admit it to be true that the said Leonard M. Scott and Henrietta Ann Scott, two of the legatees in the said will of the said Leonard Scott, deceased, named, departed this life under age and without issue, as is charged in the said bill of complaint.

As to that part of the complainant's bill which calls on the defendants to account for the personal estate and effects of the said testator which may have come into their hands, and of the rents, issues and profits of lots Nos. 2, 3, 4 and 5, which have come or ought to have come into their hands prior to the time the complainant came of age, they submit that as all the personal property, after the payment of debts and expenses, and pecuniary legacies, was given to the said Lucretia, one of the defendants, by the said will; and as the use and enjoyment of lot No. 1 is given to the said Lucretia by said will during her natural life, and also the use of lots Nos. 2, 3, 4 and 5, until the daughters of the said testator should respectively attain the age of twenty-one years, that they cannot be required, either in law or equity, on any ground stated or set forth in the complainant's said bill, to make any such account, there being no allegation or pretence that the said legacies have not been fully paid, so far as this complainant is interested therein.

*Wm. Halsted,* for complainant.

*Messrs. Beasley* and *P. D. Vroom,* for defendants.

THE CHANCELLOR. The doctrine as laid down by Sir Edward Sugden, in reference to the incapacity of a person in the exercise of his duty as trustee, becoming the purchaser of the property of his *cestui que trust*, has always been recognized as the law in New Jersey. He says, (2 *Sugd. Vendors and Purchasers* 109,) "It may be laid down as a general proposition, that trustees, unless they are nominally such to preserve contingent remainders—agents, commissioners of bankrupts, assignees of bankrupts, solicitors to the commission, auctioneers, creditors who have been consulted as to the mode of sale, or any persons who, by their connection with any other person, or by being employed or concerned in his affairs, have acquired a knowledge of his property, are incapable of purchasing such property themselves, except under the restraints which will shortly be mentioned. For if persons having a confidential character were permitted to avail themselves of any knowledge acquired in that capacity, they might be induced to conceal their information, and not to exercise it for the benefit of the persons relying upon their integrity. The characters are inconsistent. *Emptor emit quam minimo potest, venditor, vendit quam maximo potest.*"

The courts of law in this state have carried this doctrine to the extreme, in its application to executors and administrators purchasing the property, which in such representative capacity they were authorized to sell. They have declared that a deed to them, as such purchasers, could not be set up in an action at law against the *cestui que trust* and those claiming under them; and that a person who has a right to avoid such a deed, may make his objection to its validity in an action of ejectment, and is not obliged, in order to impugn it, to resort to the Court of Chancery. *Winans* v. *Brookfield*, 2 *South.* 847; *Den* v. *Wright*, 2 *Hal.* 179; *Den* v. *McKnight*, 6 *Hal.* 385; *Den* v. *Hammer*, 3 *Harr.* 74.

And the Court of Errors and Appeals, at the term of March last, in the case of Mulford *v.* Merrick and others,

gave its sanction to the principle as it had been heretofore maintained by the courts of law in this state.

There is no case reported where the principles applicable to such purchases have undergone an examination in the Court of Chancery in this state, but the doctrine as laid down in *Davoue* v. *Fanning and others*, 2 *Johns. Ch. R.* 252, and *Michoud et al.* v. *Girod et al.*, 4 *How.* 552, has always been recognized and approved. An executor selling land in the execution of a trust expressed in the will, either at public or at private sale, or under an order of the court, cannot, either directly or through the agency of another, become the purchaser or interested in the purchase, at such sale. It matters not how fairly the sale may have been conducted, or that the property was sold for its full value, it is at the option of the *cestui que trust* to avoid it at his pleasure. The sale is void as to him, if he shall elect so to treat it, and it is his right, which a Court of Chancery will not refuse, to have the purchase set aside, and the property re-exposed to sale under the direction of the court.

It was argued by the defendant's counsel, that the rule thus laid down is too stringent—and in very many cases would operate to the prejudice of the *cestui que trust*—that a child, an executor to his father's will, desirous of purchasing the estate of his ancestors, and willing to give more than its value, *pretium affectionis*, is prohibited by so stringent a rule, not from making a good bargain, but from gratifying the most honorable promptings of the heart. If this were true, yet the particular hardships it may work, are much more than counterbalanced by the general beneficial tendency of the rule. It is a rule as essential to sound morals as it is to pure administration of justice. A relaxation of it, by compelling the party seeking to set aside a sale to show inadequacy of price, unfairness or positive fraud, would be a protection to fraud in nine cases out of ten. The seller, whose duty it is to procure the highest price, not being allowed, by the temptation of making a good bargain for himself, will exercise a diligence and make

efforts, the relaxation of which would follow the abandonment of the rule, and must necessarily operate to the disadvantage of the *cestui que trust*, and amount in fact to a fraud upon him, which the court would not be able to reach upon the mere ground of inadequacy of price. A positive fraud committed upon the rights of an infant, after a lapse of years, in consequence of the death of witnesses, and numberless other incidents, could but seldom be proved.

But the principle has been so ably vindicated by Chancellor Kent, in the case in 2 *Johns.*, already referred to, and by the ablest Chancellors of England, whose opinions are reviewed by Chancellor Kent, that a reference to the Chancellor's opinion renders anything I can say in support of it superfluous. I adopt the rule in the broadest extent as recognized by him. Subsequent decisions in New York have followed the principles laid down by Chancellor Kent. *Rogers* v. *Rogers*, 3 *Wend.* 503 ; *De Cater and wife* v. *Le Ray, De Chaumont and others*, 3 *Paige* 178 ; *Van Epps and wife* v. *Van Epps*, 9 *Paige* 237 ; *Torrey* v. *Bank of Orleans*, 9 *Paige* 649 ; *Conger* v. *Ring*, 11 *Barb. Sup. C. Rep*. 356. See also 1 *S. Eq.*, § 322.

But the hardship referred to by the defendants' counsel is not without a remedy. A trustee may purchase at his own sale with the consent of this court, and that consent may be obtained by bill, or perhaps by petition.

In *Campbell* v. *Walker*, 5 *Ves., Jr., Rep.* 678, the master of the rolls, in replying to a like suggestion, says: "The only thing a trustee can do to protect his purchase is, if he sees that it is absolutely necessary the estate should be sold, and he is ready to give more than any one else, that a bill should be filed, and he should apply to this court, by motion, to let him be the purchaser. That is the only way he can protect himself; and there are cases in which the court would permit it ; as, if only five hundred pounds was offered, and the trustee will give one thousand pounds. The consequence would be, the court would do that which this rule is calculated to procure. The court would divest him of the character of trustee, and prevent all the consequences of his

acting both for himself and for the *cestui que trust;* for the reason of the rule is, that no man shall sell to himself; a case in which it is impossible for the court to know that he did not do all he ought to have done. In no other way, that I can figure to myself, except that I have mentioned, can the trustee become the purchaser, without being liable to be called upon to give up the purchase." And again, in speaking of the rule, he says, "I know it very often turns to the disadvantage of the infants, but I cannot help that. It is better to adhere to the general rule. I wish it to be understood upon what terms trustees may purchase, so as to be protected from this equity; and I repeat, there is no other way than that I have mentioned—a bill filed, and the trustee saying so much is bid, and he will give more. The court would examine into the circumstances, ask who had the conduct of the transaction, whether there is any reason to suppose the premises could be sold better, and upon the result of that inquiry would let another person prepare the particular, and let the trustee bid." The history of this case, (further reported in 13 *Ves.* 600,) is a most triumphant vindication of the propriety of the rule itself. The conduct of the trustees who had purchased was not impeached, and the master of the rolls took occasion to say that he did not wish to be considered as reflecting upon them. He ordered a reference to a master for inquiry. The master reported the value of one of the estates to be near double the price given by the trustees, and upon the re-sale it actually produced double.

It remains to apply the principle to the case before us.

Philip Gamble intermarried with Lucretia Gamble, who was the executrix of her late husband, and who had proved and taken upon herself the execution of the will. By his marriage he assumed all the duties and responsibilities which devolved upon his wife as executrix. She could only act under his control and with his assent; his interest was one with hers; they are one in the law. The husband is liable in law and equity, as long as both parties are alive, for the acts of his wife as executrix, for, as she has no power to act

alone, his assent will be presumed. He acts in his wife's right, for his own safety. It was the interest of the executrix, that the husband should buy the property at a small price.

But it is unnecessary to pursue this branch of the case further, as it was not pressed by the defendant's counsel. If Philip Gamble, the husband of the executrix, purchased the property, the rule, as it has been laid down, is applicable.

I cannot give my entire approbation to the manner of the sale. The *cestuis que trust* were infants. The step-father, one of the defendants, had erected buildings on the lots, as he alleges, in ignorance of his rights. It was of great importance to him to become the owner of the lots, and not be put to the expense of removing the buildings. By his marital rights, the control of the property of these infants had devolved upon him. Under these circumstances, more than ordinary caution was necessary in conducting the sale. Yet the advertisement was for only two weeks, in a weekly newspaper, and no other notice of the sale was given. The evidence as to what took place at the time of sale, shows that not much effort was made, if any, to procure bidders. But, notwithstanding all this, the evidence, I think, establishes the fact that the lots brought their full value. It is true, there are witnesses of the complainant's who rate the value of the lots at a much higher price than they were struck off at, but their means of information do not entitle their judgment to the same weight as that of the defendants' witnesses. If the price really was an inadequate price, or anything below the real value of the property, there could be no difficulty, situated as these lots are in the city of Trenton, where property has a fixed value, in the complainant's establishing the fact. The evidence in the case proves that the property brought its value.

Did Gamble purchase at the sale? It is denied by the answer, and was earnestly contended, on the argument, that the proof in the case does not establish the fact.

The property was struck off to Thomas Gordon. Mr. Gordon had been, and was then the agent of the defend-

ants, and, according to the answer, had "held in his hands and under his control, the entire personal estate of the said testator, and continued to hold the same until its final distribution." He was present at the sale, and acted as clerk, and it was made at his suggestion, and under his management and superintendence. He told Gamble, on the day previous, that he, Gamble, could not be permitted, by law, to purchase. The property was struck off to Mr. Gordon. On the day of the acknowledgment of the deed from the executrix to Mr. Gordon, Gordon conveyed to Gamble for the same price that the property had been struck off at the public sale. Gordon paid no part of the purchase money, but it was secured by Gamble, which securities were drawn up by Gordon, and were received by him, after the execution, as the agent of the executrix, and were held by him until disposed of agreeably to the directions of the will.

Mansfield Herbert testifies that in a conversation with Gamble, the witness said to Gamble, if he had been at the sale, Gamble would not have got the lots at the price he did. To which Gamble replied, "You could not have bought them, for my houses were upon them. I got Mr. Gordon to buy them for me."

Isaac Welsh says that he said to Gamble, "You bought this property, Mr. Gamble." He replied, "Yes, I bought it." This was about a month after the sale.

The effort to impeach the testimony of these witnesses entirely failed.

George Shreve says that after the examination of Mansfield Herbert, in this cause, Gamble told him that the witness had sworn to a falsehood—"that he, Gamble, had never told Herbert that he, Gamble, had got Judge Gordon to buy those lots for him, but that he had told Mansfield Herbert that Judge Gordon had bought the lots for him, Gamble;" and Gamble told the witness, in this conversation, that Judge Gordon had bought the lots for him, but that he had not asked him to do it.

I think the positive evidence and the circumstances attending the whole transaction, make out very clearly that

the purchase was made by Judge Gordon for Philip Gamble. It is a conclusion which can hardly be resisted, from the evidence, both positive and circumstantial, in the case. The efforts to cover up the fact only make it the more palpable.

But the defendants, by their answer, insist that the complainant has ratified the sale by receiving, after she arrived of age, with full knowledge of all the facts, her proportion of the purchase money.

Philip Gamble, in payment for the property, executed a mortgage on the premises to Judge Gordon, for the sum of eight hundred and two dollars and fifty cents, to secure the payment of three several bonds, conditioned for the payment of two hundred and sixty-seven dollars and fifty cents each. Under the will of Leonard Scott, the testator, when Amanda, the youngest child, arrived at the age of twenty-one, in consequence of the death of all the legatees, except the complainant and her sister Amanda, the complainant became entitled to one-third of the proceeds of the sale, and her surviving sister to one-third. One-third belonged to the executrix.

Two of these bonds went into the hands of Judge Gordon, in trust, for the purposes of the will, and to secure the shares of these two daughters.

After the complainant arrived at age, and as soon as by the terms of the will she was entitled to her share of the proceeds of the lots, Judge Gordon assigned one of the bonds to the complainant, and one other to her sister Amanda. The third belonged, as before stated, to the executrix, absolutely. On the assignment of the bonds, the complainant and her sister gave the following receipt :

Philip Gamble ⎫  Two bonds, each dated July 25, 1843,
    to    ⎬ and made in the penal sum of five hun-
Thomas Gordon. ⎭ dred and thirty-five dollars each, conditioned for the payment of two hundred and sixty-seven dollars and fifty cents each, at the time therein specified.

Philip Gamble ⎫  Mortgage, dated July 25, 1843, on
    to    ⎬ property in the city of Trenton, to secure
Thomas Gordon. ⎭ the payment of the above bonds.

We, Elizabeth Scott and Amanda Scott, daughters of Leonard Scott, deceased, hereby acknowledge that we have received the above bonds and mortgage, given to secure our respective shares of the proceeds of the sale of a certain lot, sold under the will of the said Leonard Scott, deceased, the same having been held in trust for us by the said Thomas Gordon, and now assigned to us by him, March 20th, 1847.

ELIZABETH SCOTT.

AMANDA SCOTT.

Witness present—CALEB S. GREEN

This receipt is in the hand-writing of Caleb S. Green, Esq., counselor-at-law, and witnessed by him. At the time of its execution, Mr. Green was acting as the attorney of the complainant and her sister in regard to that business. He had been the guardian, appointed by the Orphans' Court, of each of them, until they respectively arrived at age. Mr. Green afterwards collected the money on these bonds, after commencing to foreclose the mortgage, and paid over the proceeds.

The question arises, under these circumstances and after having received, with full knowledge of the facts, the proceeds of the sale, is the complainant entitled to have the sale set aside, and a re-sale of the property? The fact of her having received the purchase money is not an absolute estoppel to the complainant's right of avoiding the sale; for no matter what the ratification by her might have been, whether by the mere receipt of the purchase money, or by a more solemn act of release under seal, if such ratification had been without a knowledge of the facts, and in ignorance of her rights, it would be no obstacle to her obtaining relief.

But, on the contrary, when such act of ratification is done with deliberation, and with a knowledge of the fact which would avoid the sale, it is a bar to any relief which this court might otherwise have afforded.

It the case of Michoud et al. v. Girod et al., before referred to, two of the complainants had given receipts and acquittances to the executors. But the complainants put

their case, upon the ground that these acquittances were given in ignorance of their rights.   That issue was made by the pleadings.   See state of case, 524, 525, of 4 *Howard*.   The bill charged that by concealment of facts which they knew to exist, and were bound, as agents, to communicate, the executors obtained from some of them an acquittance or transfer of all claims against the succession ; and in page 561 of the case, the court say, "The receipts or acquittances given by two of the complainants to the executors do not affect their rights.   They were obviously given without full knowledge of all the circumstances connected with the disposal and management of the estate.   Indeed, it is plain that such information had been withheld by the executors."

In the case of *Butler et al.* v. *E. Haskell*, 4 *Dessaus. R.* 709, a class of cases, very numerous, will be found cited by the court, in reference to the validity of acts of confirmation of contracts originally void or voidable.   It will be found that where the court has refused to them its sanction, it has been on the ground of gross fraud or misrepresentation in the original contract, or when the act of confirmation has been executed in ignorance by the aggrieved party of his rights, or procured under circumstances the court will not countenance.

But the validity of the act of confirmation by the complainant in this case is not put in issue by the pleadings. The complainant, in her bill, states the fact that she received her portion of the purchase money, and makes no complaint of any concealment on the part of the defendants at the time, or that she was ignorant of any of the facts and circumstances of the transaction.

The receipt she gave was in the presence of and under the advice of counsel, drawn up and witnessed by him ; it states that the bonds were given for the purchase money ; and the mortgage of Gamble on the very lots to secure the purchase money, is assigned to her.   There was no want of time for reflection.   The act was a deliberate one ; and afterwards the bonds and mortgages were put in suit and the money collected.

In *Betton* v. *Briggs and others*, 4 *Dessaus. R.* 465, the land in question was the mother's during her widowhood, and Thomas and his two brothers had a joint estate in fee simple after their mother's death. The mother, together with Thomas' two brothers, sold the land to the complainant, with an agreement that Thomas, when he came of age, should confirm it. With the purchase money they bought another estate. When Thomas arrived at age this last estate was sold, and he joined in the deed of sale, and received his part of the purchase money. This was held a confirmation, and on a bill filed Thomas was decreed to a specific performance of the agreement made by his mother and brothers.

Upon the ground that this sale was ratified by the complainant, by her receipt of the purchase money, and that this act of ratification stands in full force, without even an allegation on the part of the complainant, that what she did was in ignorance of her rights, and without the validity of that act as an act of confirmation being put in issue, I do not feel that I should be justified in interfering with the sale.

This bill is filed for another purpose, also. It is alleged that the complainant had deposited to her credit in the Saving Fund Bank of Philadelphia, two hundred and eighty-seven dollars, and that the defendant Lucretia induced the complainant to draw this money out of the bank and loan it to the said defendant.

This bill is filed against the defendants in their capacity of trustees, and as the representatives of Leonard Scott, the testator, and the prayer of the bill is in conformity thereto.

If this money belonged to the complainant, as is alleged, and was borrowed by the defendant Lucretia, or by both of the defendants, why should the defendants account for it as part of the estate of the testator?

The bill is filed against the defendants in their representative characters, and the complainant is entitled to an account in that aspect only.

Scott v. Gamble and wife.

As to the prayer of the bill, that the defendants may account for the personal estate and effects of the testator, there is no propriety shown for taking these accounts in this court.

Let the bill be dismissed, with costs.

CITED *in Moore* v. *Gamble*, 1 *Stock.* 255; *Obert* v. *Obert*, 2 *Stock.* 103; *Culver* v. *Culver*, 3 *Stock.* 219; *Holcomb* v. *Holcomb*, 3 *Stock.* 287; *Holcomb* v. *Holcomb*, 3 *Stock.* 482; *Huston* v. *Cassedy*, 2 *Beas.* 230; *Howell* v. *Sebring*, 1 *McCar.* 90; *Staats* v. *Bergen*, 2 *C. E. Gr.* 307; *Booraem* v. *Wells*, 4 *C. E. Gr.* 87; *Blauvelt* v. *Ackerman*, 5 *C. E. Gr.* 141; *Haughwout and Pomeroy* v. *Murphy*, 7 *C. E. Gr.* 551.