ROMAINE *vs.* HENDRICKSON'S EXECUTORS.

1. A sale by a trustee to himself, of trust property, is always voidable at the option of the *cestui que trust.*

2. A trustee who has taken a conveyance of lands of his testator from a purchaser thereof at a sale, in the notice of which such trustee joined, with his co-trustees, and declared with them, by the conditions of sale the terms upon which it must be made, (thereby accepting the trust), cannot relieve himself from liability to his *cestui que trust* for the profits which he made on a re-sale of those lands, on the ground that he did not take out letters testamentary under testator's will.

This case was heard on bill, answers, and oral proofs.

*Mr. William H. Vredenburgh,* for complainants.

*Mr. J. E. Laning* and *Mr. Robert Allen, Jr.,* for defendants.

THE VICE-CHANCELLOR.

The bill in this case has two objects: First, to invalidate the title made by the executors of Garret S. Hendrickson, deceased, to one of their number, to a part of the testator's real estate, and, in the second place, to compel the defendants to account for the profits realized on a re-sale, to innocent pur-

chasers, of certain other parts of the testator's real estate sold by the executors to themselves.

The testator appointed his widow, Hannah Hendrickson, and his two sons, Samuel W. and William H., to execute his will. The widow and Samuel qualified as executors; William did not. At the time of his father's death he was a minor, under seventeen years of age. He has never renounced his right to join in executing the will. Notice of the sale of the land, at public auction, was given in his name as executor, as well as in the names of the other two executors, and his name was affixed to the conditions of sale, with his knowledge, by the same person who wrote the names of the other executors thereto.

It is admitted that all the real estate of which the testator died seized, was purchased by Samuel T. Hendrickson, at the joint request of the widow and Samuel. The fact that Mrs. Hendrickson joined in the request is clearly admitted in her answer to the interrogatories annexed to the bill. She says: "I first spoke to Samuel T. Hendrickson about bidding on the day of sale; I requested him to bid the farm up to $40,000, and he said he would; afterwards, I requested him to continue bidding after he had run it up to $40,000; I did request him to buy the farm and woodland." It is also admitted that, prior to the sale, it had been agreed between Samuel and William they would buy their father's real estate together, unless it was bid up to a sum beyond what they thought it was fairly worth; that on title being made to Samuel T. Hendrickson, he immediately conveyed part of the lands to Samuel, and the residue to William, for the same consideration he had agreed to pay, and that they have since re-sold all, except about twenty-three acres, still held by Samuel, at an advance of nearly $14,000.

The legatee, whose rights are now held by the complainants, was under nineteen years of age, and a *feme covert*, at the time title was made by the executors. She died about two years after attaining twenty-one.

It was not disputed that the title to that part of the land still held by Samuel must be nullified, and that he must account for the gains made by him on the parts he has conveyed away. The dispute in the case was limited to the question whether or not William was bound to account for the profit he had made. It was insisted he was not liable, because he had never formally accepted the trust by taking letters testamentary. It was not necessary. As to the land, his power was derived from the will. By joining in the notice of sale, and in declaring with the other executors, by the conditions of sale, the terms upon which the purchase must be made, he accepted the trust and placed himself in a position where it was his duty to subordinate his interests to those in whose behalf he assumed to act. He cannot be permitted to join in appointing a time and place of sale, and in deciding what notice shall be given of it, and the terms on which it shall be made, and then deny his authority to participate in the sale, in order to escape the consequences of his acts prejudicial to those for whom he assumed to act. He exercised the powers of a trustee over the property of the legatees, and must take the responsibility incident to the power. But if it were conceded he was not a trustee, and did not participate in the sale as a vendor, I cannot see how it would help him. The purchase was made at the instance of the two persons whose authority to act as trustees is not denied. They both swear, in answer to the interrogatories annexed to the bill, that the purchase was made by their direction. The rule invalidating a sale by a trustee to himself, of trust property, is a rule of public policy, founded upon the highest considerations of safety. It cannot be violated, in any case, without putting it in the power of the cestui que trust to avoid the sale. *Staats* v. *Bergen*, 2 *C. E. Green* 558. One of its most obvious purposes is to prevent the trustee from using his knowledge of the character and value of the property, and of the wants, necessities, and situation of the cestui que trust, and his power over the estate, to the prejudice of the cestui que trust. He is bound to exert

Romaine *v.* Hendrickson's Executors.

his best skill and sagacity, and to sell to the best advantage. So jealous is the law of the interest of the *cestui que trust*, that it will not tolerate the slightest antagonism on the part of the trustee. The object of the rule is to prevent the trustee from using his information and power to the prejudice of the *cestui que trust;* whether they are used for the benefit of the trustee or some other person against the *cestui que trust*, the consequences are the same to him, and, in either case, justice requires the *cestui que trust* shall have the right to avoid the sale. *Davoue* v. *Fanning*, 2 *Johns. Ch.* 254; *Ex parte Bennett*, 10 *Ves.* 381. In the case last cited, Lord Eldon says: "Then if the principle be that the solicitor cannot buy for his own benefit, I agree, where he buys for another, the temptation to act wrong is less; yet, if he could not use the information for his own benefit, it is too delicate to hold that the temptation to misuse that information for another person is so much weaker, that he should be at liberty to bid for another; and so he might bid for his son, his relation, or his employer. That distinction is too thin to form a safe rule of justice." The sale in controversy violated every consideration of safety and justice upon which the rule of policy invoked by the complainants is founded, and must, therefore, be held to have been voidable. In my judgment, William H. Hendrickson is bound to account for the gain made by him on the re-sale of that part of the land purchased by the executors for him.