Marshall v. Carson.

DAVID H. MARSHALL et al., appellants,

*v.*

ISAAC CARSON et al., respondents.

1. Executors charged with the sale of lands to pay debts, purchasing such lands at a sheriff's sale under execution against testator, will, at the instance of *cestuis que trust*, be decreed to hold such lands by a continuing trust, or held to account for the proceeds if the same have been resold to *bona fide* purchasers.

2. The interest of such persons as purchasers in their own right is in conflict with the duty which, in their fiduciary character, they owe to creditors and beneficiaries under the will.

3. No trustee can directly or indirectly become a purchaser, in his own behalf, of the trust property, and hold it against the *cestui que trust*.

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Carson* v. *Marshall, 10 Stew. Eq. 213.*

Mr. *P. L. Voorhees* and Mr. *S. H. Grey*, for appellants.

An executor is not precluded from bidding for and purchasing his testator's land, at a sale made by a sheriff on an execution issued upon a judgment recovered against the testator in his lifetime.

Such a sale is not made by the procurement of the executor, and the rule that a trustee cannot be buyer and seller at his own sale, does not apply. A sale made under the circumstances stated. is neither void nor voidable at option of *cestui que trust*.

*Den* v. *Hillman, 2 Hal. 180 ; Earl* v. *Halsey, 1 McCart. 332 ; Fisk* v. *Sarber, 6 W. & S. 18 ; Chorpenning's Appeal, 32 Pa. St. 315 ; Meanor* v. *Hamilton, 3 Casey 137 ; Cadbury* v. *Duval, 10 Pa. St. 265, 272 ; Jackson* v. *Wooley, 11 Johns. 446 ; Sheldon* v. *Sheldon, 13 Johns. 220, 223 ; Hollingsworth* v. *Spaulding, 54 N. Y. 636 ; Prevost* v. *Gratz, 6 Wheat. 481, 513 ; Dexter* v. *Harris, 2 Mason C. C. 531, 533, 535 ; Shakeley* v. *Taylor, 1 Bond 142.*

*Messrs. Bergen & Bergen,* for respondents.

The opinion of the court was delivered by

Knapp, J.

The appellants, the defendants below, were executors of the last will of David E. Marshall, deceased. The testator, at his death, left a large real estate, most if not all of which was to some extent encumbered by mortgage, and there were judgments recovered against him in his lifetime, to the amount of about $14,000, upon which executions had issued and were in the hands of the sheriff at the time of his death.

By his will he empowered and directed his executors to make sale of so much and such parts of his lands as they should select for that purpose, as would be sufficient to pay his debts; and also devised to them five twenty-fourths of what should remain after paying such debts, and securing an annuity of $400 to his wife for life, to be held by said executors in trust for his son, Charles E. Marshall, for his life. The executors failed to make sale of any lands for about seven months, or to pay or satisfy said executions, when a tract of land of about three hundred and eighty acres, consisting of several farms, was advertised and sold by the sheriff, at public sale, under the executions in his hands; and at such sale the appellants became purchasers for their own benefit. The complainants and respondents here were unpaid creditors of the estate, who had filed their claims under oath with the executors, and their claims were not disputed. Upon the advice of Vice-Chancellor Bird, who heard the cause upon bill, answer and proofs, the appellants were decreed to hold so much of the said lands purchased by them as remained unsold to *bona fide* purchasers, in trust for the creditors and beneficiaries of the estate, and they were required to account for the proceeds of such lands as they had sold to *bona fide* purchasers, together with the rents and profits of said lands; for expenditures made by them on account of said lands, credit was to be allowed. The decree thus made against them was put upon the ground that by the will which appointed them, as well as in virtue of their gen-

eral duties as executors, they were charged with trusts in respect to said lands in favor of devisees and creditors with which their interests, as purchasers in their individual right, were so in conflict, that they were precluded from buying at the sale so made, and holding the purchase against such creditors and devisees. Other grounds for invalidating the sale were laid in the bill, upon which a large volume of testimony was taken, but the court below put its decision upon the ground stated; and the argument here has gone mainly on the correctness of the legal rule and the propriety of its application to this case. The appellants claim that, notwithstanding their position as executors under the will, their purchase of the testator's property in their own right at a sale under executions against him in his lifetime, or indeed, at any time, was legal and proper; that, as executors, they were chargeable with no duty relative to the testator's lands when in legal custody, or in process of sale to satisfy judgment liens thereon, and might bid and buy such property as might any stranger, provided they neither procured, promoted, nor encouraged such sale to be made; in short, that in bidding successfully at the sale, their personal interests were not adverse to any duty or trust which they held toward the estate, but, on the contrary, advanced rather than opposed the interests of the estate and its creditors. The legal doctrine which the appellants assert, and must maintain in support of their present claim, if they hold trust relations to this property, is, that a trustee is incapacitated from purchasing trust property only when such trustee is directly or indirectly the vendor of such property, and that his title acquired by purchase at the sale of such property by another cannot be called in question by his *cestui que trust* except for actual fraud.

The rule that one clothed in a fiduciary character cannot either directly or indirectly become a purchaser of the trust property at his own sale and hold such property against the dissent of the *cestui que trust*, is of such universal prevalence and so grounded in the demands of public policy, that no one ventures to question its existence, or seeks now to overthrow it. Is this case within the reason and force of this rule? In looking at the many cases

involving consideration of this doctrine, a sale by or under the control of the trustee, is not always present as a feature, in the litigations which in judicial judgment have called for the application of the salutary principle which the rule embodies. Its adoption is to prevent, as far as possible, fraud on the part of those having control of trust property, and to protect, to the largest possible extent, the beneficiaries of such trusts, who, without this safeguard, are found by experience to be grievously exposed to the hazard of fraud and wrong-doing, such as courts find difficult, if not impossible, to redress. The necessity of placing guards around those whose interests are entrusted to the agency and control of others, springs out of the weakness and infirmity of human nature, which observation and experience show is not proof against the seductive and insidious influence of selfish interest, and ought not to be put to the temptation to acquire personal gain through failure in, or unfaithful performance of, fiduciary obligations. It recognizes the difficulty, if not impossibility, of tracing actual fraud in every case, and the frequent failure of justice and success of wrong that must be consequent thereon, and it attempts to apply a method that will remove all temptation from the mind of the trustee to profit by infidelity in the discharge of trust duties of every sort, and which will remove all inducements to act otherwise than faithfully toward the beneficiary, by utterly refusing to consider the question of good or bad faith, and holding the trustee who attempts to deal with the trust property as an individual, to all the chances of loss, and denying to him all possible gain. This rule, although perhaps most frequently found applied in the decided cases where the existing fact is a sale by or under the direction of the trustee, is by no means limited to that circumstance, as reference to decided cases will show.

The principle stated by Chancellor Kent is expressed in the broad and comprehensive terms that a trustee cannot act for his own benefit on a subject connected with the trust, and he vindicates it by his usual strength of reasoning, fortified by a great array of cases of recognized authority (*Davoue* v. *Fanning, 2 Johns. Ch. 252,* and cases cited); and while in that case the pur-

chase was indirectly by the trustees who sold, the ground upon which the trust was decreed as continuing, must, if maintained as a general principle, exclude the exception which the appellants here seek to engraft upon it, for, to admit it, is, I think, to strike down the principle itself.

Chancellor Walworth, in *Van Epps* v. *Van Epps, 9 Paige 237*, states the doctrine in this wise: "The rule of equity which prohibits purchases by parties placed in a situation of trust or confidence with reference to the subject of purchase, is not confined to trustees or others who hold the legal title to the property to be sold; nor is it confined to a particular class of persons, such as guardians, trustees, or solicitors. But it is a rule which applies universally to all who come within its principle; which principle is, that no party can be permitted to purchase an interest in property and hold it for his own benefit, where he has a duty to perform in relation to such property which is inconsistent with the character of a purchaser on his own account and for his individual use."

The principle was applied to a purchase at a master's sale on foreclosure by one who held a junior mortgage in trust for others, and because he was in duty bound to protect the interest of the *cestuis que trust* which was to have the property bring the highest price, his interests as a purchaser on his own account were antagonistic to theirs.

In *Lytle* v. *Beveridge, 58 N. Y. 592*, a devisee for life was executor under the will of his father. There was a judgment outstanding upon which executions had issued in the lifetime of the testator. The executors, with personal estate in hand, failed to pay the execution claim, and the devised lands were sold by the sheriff and purchased by the executor, who was life-tenant. The devisees of the remainder in fee, on the death of the life-tenant, were held entitled to the lands against claimants by devise under the will of the executor so purchasing at sheriff's sale, that court holding it a breach of duty and violation of the fiduciary relations existing between the executor and the heirs and devisees of the testator to purchase the lands for himself, and that the title taken at sheriff's sale inured to the benefit of the devisees in re-

mainder. The court there says that a trustee, or one charged
with the duty of protecting and caring for property as executor,
trustee, agent or otherwise, cannot deal with it or become the
purchaser of it for his own advantage and to the prejudice of
*cestuis que trust*, heirs, devisees or principals. The principle is
universal and applies to all persons having a duty to perform in
reference to a sale inconsistent with the character of purchaser.

The case of *Fulton* v. *Whitney, 66 N. Y. 548*, presents another
instance where the rule was applied to a trustee purchasing in-
directly at a judicial sale. The same principle will be found ap-
plied in the following cases: *Case* v. *Carroll, 35 N. Y. 385;
Tiffany* v. *Clark, 58 N. Y. 632; Bennett* v. *Austin, 81 N. Y.
308; Torrey* v. *Bank of Orleans, 9 Paige 649*. In the well-
known case of *Staats* v. *Bergen, 2 C. E. Gr. 297*, in this state,
the point of decision was whether the rule was applicable to a
purchase by a trustee at a judicial sale, and in the able opinion
of Mr. James Wilson, who sat as master to advise with Chan-
cellor Green, it was held that upon principle and authority it
applied as well to such sales as to those made by the trustee him-
self. Many of the authorities are collected in that opinion. The
decree in that case was, on appeal to this court, affirmed, the court
finding no difficulty or impediment in the way of applying the
principle to a purchase at an official sale.

Chief-Justice Beasley, in delivering the opinion of this court,
uses this language: "The trustee is forbidden to purchase, be-
cause his interest as such purchaser is opposed to the interest of
his *cestui que trust*, and he acts, therefore, under a bias in his own
favor.. Nor does this rule rest, to any considerable extent, in the
fact that in a particular line of cases the trustee has peculiar op-
portunities for the practice of fraudulent acts with regard to the
property in his charge. The rule, to be efficacious, must be gen-
eral, and the law implies, therefore, that in all cases of trusts
such opportunities may exist, and consequently the prohibition is
universal, that he may not do anything which, while it is an ad-
vantage to himself, is or may be a loss to the trust estate. So.
jealous is the law upon this point that a trustee may not put
himself in a position in which to be honest must be a strain upon

Marshall *v.* Carson.

him." He further adds: "I think, upon correct principle, a trustee, in no case nor in any crisis, can become the purchaser of property when the fact of his making such purchase has a tendency to promote his own interest at the expense of his *cestui que trust*." What possible difference can it make, in reason and principle, in what manner or by whom the sale is made of that which the trustee holds, when his duty in his trust relations is to make the property bring the highest price, in the protection of the interests of the *cestui que trust?* His duty remains the same; he stands concerned, for the time being, as would be the owner of the property in appreciating it. When he becomes the purchaser and exercises the conceded privilege of a purchaser to acquire at the lowest price, a direct conflict between fiduciary and personal interests arises. This, as I understand the rule, is the test of the validity of such a purchase, and not the indifferent circumstance that the sale is under the conduct of himself or another. To apply it in the former case and exclude it in the latter, would be but a partial remedy for a far-reaching evil, and would narrow down a most salutary general principle within the narrow boundaries of a technical rule.

Neither the considerations of policy upon which the doctrine has its foundation, nor the well-adjudged cases, permit such a limitation. The point is, the trustee shall not become the *purchaser* of the trust property. Any exception engrafted upon the rule that a trustee cannot act for his own benefit on a subject connected with the trust, against the will or assent of the *cestui que trust*, will, in so far, be to abridge its usefulness and value.

This subject has been a fruitful source of controversy in the courts from quite early times, and, as might be expected, the cases are not at one on the question of the right of the trustee to purchase trust property when sold by another than himself. There are cases to be found apparently supporting the appellants' view, of which *Fisk* v. *Sarber, 6 Watts & S. 18*, and *Prevost* v. *Gratz, Pet. C. C. 364*, are examples. In other cases are found *dicta* to the same effect. These cases the appellants' counsel has industriously collected, and I have endeavored to give them an attentive examination. I might, in respect to this case, quote the

language of Mr. Justice Dixon, in *Stewart* v. *Lehigh Valley R. R. Co., 9 Vr. 505, 523,* where he says, speaking of this subject, that "It has not always presented itself to the minds of judges in its full scope. At times they have been seduced into listening to suggestions that the circumstances of the special case showed the absence of fraud and overreaching. At other times they have intimated that the *cestui que trust* must seek his relief in equity." And he might have added that they were not always agreed as to what constitutes trust relations. And he adds: "But the strongest intellects have enunciated the rule with its utmost vigor and in its broadest extent."

But the cases referred to by counsel, both in this state and elsewhere, are not really at variance with the views expressed—indeed, they admit the rule, and all proceed upon the determination of the court that the purchaser whose title was sustained, was clothed with no fiduciary character in the questioned transaction. So concluding, the judgments following became inevitable. But I think it scarcely requires argument to show that the appellants in this case had a clear trust relation to this property. They voluntarily accepted the office of executors under a will which, in its first clause, empowered and directed them to sell as much of his real estate as should pay all of the testator's debts, at such times and in such manner as they should judge for the best interests of the estate, and to make conveyances for the same. In the second clause, he directed an annuity to be paid to his wife for life, in lieu of dower in all his lands, and put upon his executors the duty of selecting upon which of them it should be secured. If it should be conceded—and I should be unwilling to make such concession—that, as executors, they, under the law empowering them to sell lands for the payment of debts when the personalty failed, were charged with no duty with respect to these lands, yet here, by the express terms of the will, such duty was imposed.

Again, in the fifth clause of the will, he devises to his executors five twenty-fourths of his lands remaining after paying his debts and securing the annuity to his wife, in trust for his son

17

Charles, for his life. He further authorizes his executors, and instructs them, to rent any and all of his estate, and with the moneys received therefrom, to pay the taxes, expenses and repairs. It thus appears by the terms of this will that these executors had the whole of this estate within their power of administration. It was their clear duty, in respect to creditors, to pay their debts, if there were found sufficient estate with which to pay. If the personalty failed, their duty was to sell lands until, with the proceeds, there was sufficient to pay. They were bound to use their best skill and judgment in the provident management of the property whose care, for the time, they had assumed; and in the interest of the creditors of the estate, as well as the beneficiaries under the will, they were called upon to be zealous in the effort to avoid a sacrifice of the property in any manner. If debts were pressing, and threatened slaughter of the estate by forced sale, their duty to exercise the power given by the will to sell lands and satisfy debts became more pressing. Every reasonable effort to avoid a sale by the sheriff was required of them, and if such sale became inevitable, while they were not bound to advance their own money for the estate, either in paying the debt directly or buying the property for the estate, yet, in reason, they were required to see that the sale was fairly conducted according to law; to use reasonable diligence to avoid fraudulent, unfair dealing in the sale; to see that it was sold for the best price that could be obtained for it; if unfairly sold, or at a great sacrifice, the fair discharge of their duty, in my judgment, required that they should take the proper steps to procure a resale. All these were required by the interests of the creditors and devisees under the will, and if those interests were to be protected at all, the executors were the persons peculiarly chargeable with that duty. If these correctly summarize the requirements of their office, then it is clearly manifest that their interests as purchasers of this property, on their own account, were directly opposed to every such requirement. If because of judgments against the testator, they could, as they claim, fold their arms and withdraw themselves from the care of these lands, the estate would have been better off without

such representatives; interested parties could not be misled by relying upon them. Although they say they did make effort to stay the sale and accommodate with the pressing creditors, yet the sequel strongly presents the suspicion that, during the seven months of apparent inactivity, they were reposing upon the prospect of advantages such as they here claim as their right, for it is observable that, on the very day when they took their title from the sheriff, they were enabled to arrange with the largest judgment creditor by new mortgages, securing the same debt upon parts of the land conveyed, to set apart others to secure the annuity to the widow, and to sell for cash more than enough to pay the other judgment debts. Something of this diligence in effort expended in behalf of the estate would have obviated all necessity for the sale at which they became the purchasers, and secured the creditors at large. That results like those before us are liable or likely or possible to happen through secret design of trustees, in furtherance of private ends, is the strong ground upon which this protecting doctrine is rooted.

These executors were charged with obligations in respect to these lands with which their interests as purchasers on their own behalf were necessarily in collision. The creditors have a right that their purchase shall be declared in the exercise of a continuing trust, their application therefor being within a reasonable time, and the decree, therefore, in the court below, should in all things be affirmed, with costs.

