ALBERT BASSETT et al., appellants,

*v.*

HUBERT B. SHOEMAKER, respondent.

1. If a trustee sells the trust estate to a person who, by previous arrangement, becomes the purchaser for the wife of the trustee, the sale will be set aside as of course on the application of a *cestui que trust*.

2. If the wife desires to become a purchaser, she must apply to the court of chancery and obtain an order that the sale be conducted by and under the supervision of a master.

Appeal from a decree advised by Vice-Chancellor Pitney, who, after appeal taken, assigned the following reasons therefor :

The bill was filed by one of the beneficiaries under the will of David Shoemaker, of Pedricktown, Salem county, and asked the court to set aside the sale and conveyance by Albert Bassett, executor of the will, of a farm of the testator situate at Pedricktown.

The testator left two children, viz., David Shoemaker and Mrs. Sarah E. Bassett, wife of the executor, and the children of a deceased son, Isaac, of whom complainant is one, and two of whom are infants. By his will testator directed his executor to sell his real estate, including the farm here in question, and to divide the proceeds among his children and grandchildren by stock. The executor advertised the farm in question for sale at Pedricktown, on November 28th, 1888. It had been the home of testator, and was occupied at the time of the sale by Mrs. Mary Shoemaker, the widow of the deceased son Isaac. At the sale the only persons actually bidding were Mrs. Bassett, one of the defendants, and Mrs. Mary Shoemaker. The former bid the farm up to $102 per acre, and Mrs. Shoemaker bid $102.50, and it was struck off to her and she signed the conditions of sale, and gave her note for the required percentage. She did not, however, comply with the terms of the sale, and without, so far as it appears, any demand to enforce such compliance, the executor re-advertised the farm for sale, at the court-house, in Salem, on

January 26th, 1889. At this sale Mrs. Bassett employed the defendant Fogg to bid for her, and the property was struck off to him, at the only bid made, of $50 per acre. The deed was made and delivered on February 8th, 1889, to Fogg, who, on the same day, conveyed by deed to Mrs. Bassett, who paid the purchase-money directly to her husband. All of these facts are frankly set forth in the answer.

As soon as the court opened, I called upon counsel for the defendant to support the sale on the admitted facts, and at once; and without hearing the complainant's counsel or the witnesses, declared that I should advise a decree setting it aside.

The question then arose as to the further disposition of the property, and for the purpose of ascertaining its fair value, the witnesses who had been subpœnaed on both sides were called and sworn. From their evidence it appeared that several persons, able and willing to buy, attended the first sale at Pedricktown, but, in view of the spirited bidding by the two females, did not bid. The evidence satisfied me that, but for that bidding, the property would have brought at least $80, and probably $85, an acre, and that such was its fair value. The witnesses agree that the effect of the second sale at $50 an acre was to depress the market value, and the weight of the evidence was, that it was then fairly worth $75 an acre. Those who attended the first sale, with the view of bidding, said they thought there was no use to attend the second sale, and stayed away. It did not appear that Dr. Bassett made the least effort to ascertain the actual value of the property, or took the least pains, except by advertising, to induce purchasers to attend the second sale. One person, Theodore Fried, a German, who had attended the first sale for the purpose of bidding, and who desired to purchase, and was ready to pay $80 per acre, spoke to Dr. Bassett about the second sale, and received an answer which so far discouraged him that he did not attend. The auctioneer who conducted both sales was sworn, and stated that he had heard Fried wished to buy and would pay $75 per acre.

At the hearing, I was asked by counsel for the defendant if it was not competent for the wife of the executor to buy the prop--

erty at a fair public auction. I replied in the negative, unless the sale was approved by the court; that it would be dangerous for the court to countenance the idea that, even at auction, a sale could be made by an executor to his wife. I further stated, that the mere advertising of the premises for sale at auction, under favorable circumstances, did not comprise the whole of the duty of the executor to see to it that a full price was procured for the property; that it was his duty to ascertain beforehand what was a fair price and to attend the sale, and if the property did not reach that price, to postpone the sale; and, in fact, deal with it as a prudent man would with his own property. And, after the witnesses had been sworn, I further stated, that the evidence satisfied me that no prudent man would, under the circumstances, have permitted the property, if it had been his own, to be sold at that price.

If any authority is necessary to support the decree, I refer to *Davoue* v. *Fanning, 2 Johns. Ch. 252*. The facts of that case are substantially the same as those of the case in hand, the sale being at auction, and I refer to and adopt the language of Chancellor Kent in his opinion.

Vice-Chancellor Van Fleet, in *Romaine* v. *Hendrickson, 12 C. E. Gr. 162*, at *p. 165*, says: "So jealous is the law of the interest of the *cestui que trust*, that it will not tolerate the slightest antagonism on the part of the trustee. The object of the rule is to prevent the trustee from using his information and power to the prejudice of the *cestui que trust;* whether they are used for the benefit of the trustee or some other person, against the *cestui que trust*, the consequences are the same to him, and, in either case, justice requires the *cestui que trust* shall have the right to avoid the sale," referring to *Davoue* v. *Fanning*. The decree in that case was affirmed by the court of errors and appeals in *1 Stew. Eq. 275*, for the reasons given by the learned vice-chancellor in the court below.

*Mr. W. E. Potter*, for the appellants.

*Mr. A. Stephany*, for the respondent.

The opinion of the court was delivered by

VAN SYCKEL, J.

The facts of this case are concisely stated by the vice-chancellor, as follows:

The bill is filed by one of the beneficiaries under the will of David Shoemaker, of Pedricktown, Salem county, and asks the court to set aside the sale and conveyance by Albert Bassett, executor of the will, of a farm of the testator in said county. The testator left two children, viz., David Shoemaker and Mrs. Sarah E. Bassett, wife of the executor, and the children of a deceased son, Isaac, of whom the complainant is one, and two of whom are infants. By his will testator directed his executor to sell his real estate, including the said farm, and to divide the proceeds among his children and grandchildren. The executor advertised the farm in question for sale at Pedricktown, on November 28th, 1888. It had been the home of testator, and was occupied at the time of the sale by Mrs. Mary Shoemaker, the widow of his deceased son Isaac. At the sale the only persons actually bidding were Mrs. Bassett, one of the defendants, and Mrs. Mary Shoemaker. The former bid the farm up to $102 per acre, and Mrs. Shoemaker bid $102.50, and it was struck off to her and she signed the conditions of sale, and gave her note for the required percentage. She did not, however, comply with the terms of the sale, and without, so far as it appears, any demand to enforce such compliance, the executor re-advertised the farm for sale, at the court-house, in Salem, on January 26th, 1889. At this sale Mrs. Bassett employed the defendant Fogg to bid for her, and the property was struck off to him, at the only bid made, of $50 per acre. The deed was made and delivered on February 8th, 1889, to Fogg, who, on the same day, conveyed by deed to Mrs. Bassett, who paid the purchase-money directly to her husband. All of these facts were set forth in the answer to the bill.

The court below set aside the sale, refusing to permit Mrs. Bassett to produce evidence to show that the sale was a fair one and for the best price that could be obtained.

It is insisted on the part of the appellant, that there was error in excluding this evidence; that since the passage of the Married Woman's act, tenancy by the curtesy initiate being abolished, the husband had no present interest in the real estate of his wife, and that, therefore, she, being a beneficiary under the will, could not be denied the right to purchase in protection of her own interest.

The leading case of *Davoue* v. *Fanning, 2 Johns. Ch. 251,* presents facts substantially like the case before us. Chancellor Kent held, that other parties interested were entitled to come in and set aside the sale to the wife as a matter of course. He says: " However innocent the purchase may be in the given case, it is poisonous in its consequences. The *cestui que trust* is not bound to prove, nor is the court bound to judge, that the trustee has made a bargain advantageous to himself. The fact may be so, and yet the party not have it in his power distinctly and clearly to show it. There may be fraud, as Lord Hardwicke observed, and the party not be able to prove it. It is to guard against this uncertainty and hazard of abuse, and to remove the trustee from temptation, that the rule does and will permit the *cestui que trust* to come, at his own option, and without showing actual injury, and insist upon having the experiment of another sale. This is a remedy which goes deep and touches the very root of the evil."

This rule has been fully adopted into the law of this state. The incapacity of the trustee to become a purchaser at his own sale, rests upon the ground of public policy. It is wholly immaterial whether the property brings its full value. *Culver* v. *Culver, 3 Stock. 215; Mulford* v. *Bowen, 1 Stock. 797.*

The exclusion of the wife as a purchaser, where the husband sells as a trustee, is not so much for the reason that he may subsequently become entitled to some interest in her lands, as on account of the unity which exists between them in the marriage relation. The case falls clearly within the spirit of the principle which excludes the husband himself.

In *Romaine* v. *Hendrickson, 12 C. E. Gr. 162,* affirmed *1 Stew. Eq. 275,* Vice-Chancellor Van Fleet says: " So jealous is the law of the interest of the *cestui que trust,* that it will not tolerate

Arnett *v.* Welch.

the slightest antagonism on the part of the trustee. The object of the rule is to prevent the trustee from using his information and power to the prejudice of the *cestui que trust.*"

In my opinion, therefore, the decree of the court below setting aside the sale should be affirmed.

The prayer of the complainants' bill is, that the said sale be set aside. The decree below is not only that the sale be set aside, but also, that one of the special masters of the court of chancery shall sell the said farm. In this respect the decree was erroneous, and should be set aside. The property should be re-sold by the executor in pursuance of the directions of the will of the testator. If the wife desires the privilege of becoming a purchaser at the sale, the proper practice will be to apply to the court of chancery for leave to buy, and have the re-sale conducted by and under the supervision of a master to be appointed by that court. If the property shall be struck off to the wife, the executor will execute a deed to the master, who will convey in due form to the wife.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Depue, Garrison, Magie, Reed, Van Syckel, Brown, Clement, Cole, Whitaker—10.