CHARLES PROFF, complainant,

*v.*

VAHAN SHIRVANIAN, defendant.

[Decided June 2d, 1932.]

*Mr. Warren Dixon, Jr.,* for the complainant.

*Mr. Vahan Shirvanian,* defendant *pro se.*

FALLON, V. C.

The bill of complaint herein is filed to require the defendant, an attorney-at-law, to account for moneys of complainant which came to defendant's possession and for which he has not accounted. The proofs disclose that on May 31st, 1930, complainant's wife sustained injuries resulting in her death on the same day. On the following day, June 1st, complainant retained defendant to represent him in seeking a recovery of damages from the owner of the automobile which occasioned the death of complainant's wife. On the day thereafter, June 2d, the defendant, and one Edward Ward, who was employed by defendant to investigate the happening upon which complainant predicated his claim for damages, called at complainant's home to discuss the matter with him, and

in the course of conversation complainant casually remarked that he believed his stepson had taken possession of policies of insurance issued by the Prudential Insurance Company of America upon the life of complainant's wife and expressed his surmise that said policies were in the custody of his stepson's attorney. The complainant, accompanied by the defendant and two other persons, went to the office of said attorney, who, upon demand therefor, delivered said policies to complainant, and said policies on the same day were presented to the superintendent of the Hackensack office of the insurance company with whom complainant filed formal proof of claim for the payment to him of the sum of $3,067.70, the aggregate amount of said policies. A check (*Exhibit C-1-A*) signed by said superintendent, bearing date June 3d, 1930, and upon which is noted—"in full settlement of claim under policies 63323622, 66180287, 68458905, 77736342," the policies issued upon the life of complainant's wife, was turned over to defendant by a subordinate of said superintendent; the reason for the turning over of said check by the representative of the insurance company to the defendant has not been satisfactorily established herein. On the same day and shortly prior to defendant's receipt of said check, complainant received a telephone call requesting his attendance at the defendant's office, and when in response thereto he attended at the defendant's office he was informed by the defendant that the driver of the automobile which occasioned his wife's death was not insured but that defendant believed the sum of $1,500 could be obtained in settlement of complainant's claim, and defendant then and there presented to complainant a paper-writing which he represented to be a release which complainant should sign and leave with him in order that he might effect a settlement of complainant's aforesaid claim. Complainant signed said paper-writing without having read it. He testified that he was unable to read it because he had broken his eye-glasses a few days previously and had not yet obtained new glasses in their stead, and without the aid thereof he was unable to read. He testified that he relied upon defendant's representation that the paper-writing

which he was asked to sign was a release as above stated. The defendant had complainant endorse his name upon the check mentioned. Complainant testified that the defendant in requesting him to endorse said check stated he would be obliged to make use thereof in making payment of moneys to the insurance company and to several other persons in complainant's behalf. The proofs indicate that the complainant trusted the defendant implicitly and therefore readily endorsed said check and left same with the defendant who deposited it in his own bank account against which he drew his own checks to the order of several persons named and for amounts mentioned in said paper-writing, one of the items of which reads: "To yourself, for legal services for which I am indebted to you, one thousand four hundred seventy-five ($1,475) dollars." All the complainant received from defendant from said sum of $3,067.70 was the sum of $1,196.95. The complainant was not at said time indebted to the defendant for legal services or otherwise, nor had the defendant been employed by complainant to obtain payment for him of the aforesaid insurance moneys. The proofs herein establish that there was no necessity for such employment. Not only was there no dispute or question of the insurance company's liability for payment under said policies of insurance, but it is clearly manifest from the proofs herein that on the very day that said policies were turned over to the superintendent of the company the latter issued his check in payment thereof. Defendant claims complainant agreed to pay him fifty per cent. of the amount payable by the insurance company under the policies of insurance mentioned. Complainant denies such agreement. I am convinced of the truthfulness of complainant's testimony and of the untruthfulness of defendant's testimony with respect thereto. In *Riehl* v. *Riehl, 101 N. J. Eq. 15,* it was held that the chancellor, as the trier of the facts of the case before him, is the judge of the credibility of the witnesses, and, like a jury, does not have to believe a particular witness. It appears to me preposterous that complainant would have wittingly entered into such agreement or any agreement whatever with the de-

fendant with respect to moneys payable under said policies and the proofs herein manifest that there was no necessity whatever therefor; nor was there any necessity for complainant to employ the defendant to collect for him the moneys payable under said policies. I am convinced not only from the proofs herein but also from my observation of the manner in which both complainant and defendant testified as witnesses at the hearing of the cause that the complainant was not aware that the paper-writing which he had signed for defendant at the latter's request was other than a release for the purpose stated hereinabove. On or about June 17th, 1930, the defendant effected a settlement in complainant's behalf, without suit and without any difficulty whatever, of complainant's claim against the owner of the automobile which occasioned the death of complainant's wife, for the sum of $1,500, and such was consummated in the office of the same attorney who represented complainant's stepson and from whom the policies of insurance were regained as hereinabove mentioned. Of said sum of $1,500, the sum of $1,000 was paid to complainant's stepson, and the sum of $500 to complainant. From the latter sum the defendant was paid a fee of $200 for his services, and the remaining sum of $300 was turned over to an administrator of the estate of complainant's wife, ostensibly in payment of an undertaker's bill of $300 for the burial of complainant's wife, which was then unpaid. The proofs herein disclose the said sum of $300 was not used in payment of the undertaker's bill; the sum of $150 appears to have been paid out by defendant from complainant's insurance moneys to the same attorney who represented complainant's stepson. *Exhibit D-6,* hereinafter mentioned, contains an item—"to Arthur Van Buskirk, one hundred fifty ($150) dollars, representing one-half of funeral expenses." After the settlement of the $1,500 claim complainant made demand upon defendant for an accounting of the moneys paid by the insurance company upon the policies above mentioned, whereupon the defendant informed complainant there was nothing due to him, and that the sum of $1,196.95 which had been previously turned over to him by defendant was all that he

was entitled to. The proofs herein manifest that defendant relies upon *Exhibit D-6* as authority given to him by complainant for a disposition of said moneys· as therein mentioned. Defendant's claim in such respect is untenable and preposterous. There is nothing to support defendant's alleged claim other than his statement thereof, which, even though it were accepted by the court as true, could not sustain defendant's right to the sum of $1,475 as an attorney's fee. The retention thereof by defendant is unconscionable. It is a well established rule of law that even though there be an agreement between an attorney and his client, this court may inquire into the reasonableness of the charge made by the attorney to his client, and upon a finding that the charge is unreasonable the court may fix a reasonable fee for services rendered, and if the attorney be in receipt of moneys in behalf of his client in excess of the amount of fee fixed by the court the court may require the attorney to return to his client the excess. The relation of an attorney to his client is one of trust and confidence, in which influence is of necessity acquired. The law requires that all transactions of an attorney with his client shall be carefully scrutinized, to the end that the client may be protected from his own credulity, and from the influence which the relation of attorney and client generates. In *Raimondi* v. *Bianchi, 100 N. J. Eq. 238,* Vice-Chancellor Berry held: "Agreements between attorney and client, because of the confidential relation, are always subject to the scrutiny of a court of equity." A court of equity intervenes upon consideration of public policy, to prevent fraud and abuse of confidence and influence, and to compel fidelity in the performance of fiduciary duty. Relief will be afforded in equity in all transactions in which "influence has been acquired and abused, in which confidence has been reposed and betrayed." *2 Pom. Eq. Jur. (4th ed.) 2042* § *957, note,* quoting Lord Kingsdowne in *Smith* v. *Kay,* 7 *H. L. Cas.* 750. In the case *sub judice* the *actual* fraud appears to be that the defendant procured the execution of the alleged authorization (*Exhibit D-6*) by representing falsely to the complainant that it was a release to be used in settle-

ment of complainant's claim for damages resulting in the death of his wife. The *constructive* fraud appears to be that the defendant was acting as attorney for the complainant in relation to complainant's claim for damages based upon the "Death act" when complainant was induced to sign *Exhibit D-6* as though it related thereto whereas in fact it manifests no evidence whatever of any relation thereto. It is not incumbent upon complainant to prove actual fraud, since the burden is cast upon the defendant to show that the influence acquired by him over complainant had not been abused, and that the confidence reposed in him by complainant had not been betrayed. In a transaction such as appears in the case *sub judice* wherein the defendant relies upon an alleged agreement with complainant to pay him fifty per cent. of the moneys payable to him by the insurance company, as hereinabove mentioned, the burden is cast upon the defendant-attorney of showing the fairness and equity of such agreement, and if the attorney does not sustain such burden by clear and convincing proof, a court of equity will treat his bargain with his client as *constructive* fraud. It appearing herein that the defendant paid to the complainant the sum of $1,196.95 from the aforesaid sum of $3,067.70, I will advise an order that the defendant account to the complainant for the remaining sum of $1,870.75, together with lawful interest thereon from and after June 3d, 1930.