All of the significant factual occurrences and events narrated by the bill of complaint, if regarded solely in their *Page 502 
substantive character and denuded of all implications of guile or bad faith, are acknowledged to be true by the executors-trustees and by Mr. Fisher in their respective answers.
Recognizing for immediate purposes the facts in that aspect, the complainant asserts that the answers filed by those defendants fail as a matter of law to aver any adequate and effectual defenses to the prayers of the bill. In pursuit of that contention the complainant seeks the allowance of orders striking out the answers of those defendants.
The consideration of the motion to strike the answers necessitates initially a circumspect comprehension of all of the undenied factual allegations of the bill and of the answers here impugned. It will be serviceable to summarize and assemble the occurrences in a chronological order.
On February 5th, 1944, one George Webster, a resident of Flemington, Hunterdon County, New Jersey, died testate. Mr. Fisher, of the law firm of Herr Fisher with offices at Flemington, had prepared at his direction his last will and testament in which he nominated the Plainfield Trust Company of Plainfield, New Jersey, and his nephew Lester Smith to serve as executors and trustees of his estate. The representatives of the estate retained Messrs. Herr Fisher to represent them as proctors in probating the will and in the ensuing administration of the decedent's estate. On March 18th, 1944, the will was admitted to probate by the surrogate of Hunterdon County and the designated representatives duly qualified.
The will of the decedent embraced the following article:
"Seventh: All the rest, residue and remainder of my estate I leave to my executors and trustees hereinafter named in trust nevertheless, they to invest same in some good legal securities, the income therefrom to be paid in annual payments to the Presbyterian Church of Flemington, New Jersey, so long as the said Presbyterian Church meets certain requirements hereinafter specified.
"This legacy shall be effective so far as the Presbyterian Church of Flemington, New Jersey, is concerned only so long as the said Presbyterian Church continues to operate in such manner as I feel is to the good of the Church and to the members of the Church congregation. This legacy shall be effective, in respect to the provision that the income of the residue of my estate annually shall be paid to the Church annually, only in those years in which there has been *Page 503 
held in said Church regular church services each and every Sunday morning of the year, and that there shall be held regular evening services at least forty Sundays during the said year. Information that these conditions have been fully met shall be accepted by my executors and trustees and payment made of the income as herein provided to said church only when a written statement indicating compliance with the terms hereof shall have been delivered to my said executors and trustees, signed by the pastor of the church and the Clerk of said church. In event there shall be a year in which the church does not comply with the terms, hereof, then it shall not receive the benefit herein provided, but the income for that calendar year shall be paid to the Southwestern Presbyterian Sanitarium of Albuquerque, New Mexico.
"If the said Church shall fail to comply with the terms of this my last will and testament for ten calendar years, then and in such event, I direct that the entire principal herein provided for shall be paid in full to the Southwestern Presbyterian Sanitarium. It is understood that the failure does not have to be ten consecutive years, but if the time arrives when there has been ten years from the date of my death that the church has not complied with the terms of this will, then the legacy to them shall be void, and the proceeds of the trust herein provided shall descend to the Southwestern Presbyterian Sanitarium of Albuquerque, New Mexico, as herein provided."
The corpus of the residuary trust included certain real estate designated as Nos. 24-26 Main Street at Flemington, which for convenient distinction will be hereafter identified as the "George Webster property." On or about February 19th, 1944 (prior to probate of the will), Mr. Fisher at the request of the executors procured appraisals of the real estate and caused them to be dispatched to one of the executors. Appraisals were also obtained by him of an adjoining parcel owned by the estate of Sarah Webster, the deceased wife of George Webster, in which premises the mother of Mr. Fisher resided. The appraisals of the George Webster property so elicited ranged from $7,000 to $7,200; those of the Sarah Webster property were in the amount of $7,200. An appraisal independently obtained by the Trust Company estimated the value of the George Webster property to be $8,000.
Summarily stated, the succeeding eventualities were that on April 27th, 1944, Mr. Herr of the firm of Herr Fisher submitted to the executors-trustees an offer on behalf of Mr. Fisher to purchase the Main Street property of the George Webster estate for the sum of $8,000. The offer was evidently *Page 504 
regarded as acceptable by the representatives of the estate. Mr. Fisher is said to have been in New York State at that time and, accordingly, Mr. Herr prepared and forwarded to the executors-trustees a contract, together with a deposit of $800, for the conveyance of the property to one Laura Apgar. On May 3d 1944, Laura Apgar acquired for Mr. Fisher the title to the Sarah Webster property for the price of $8,000 and on May 8th, 1944, the executors-trustees conveyed the premises of the decedent's estate to her for a consideration of $8,000 subject, however, to a mortgage of the nominal value of $2,500 which she as grantee agreed to assume and pay.
Upon the acquisition of the last-mentioned property, Laura Apgar conveyed both properties to Mr. Fisher for the sum of $16,000. The deeds were recorded on May 19th, 1944. On that day Mr. Fisher and his wife executed two mortgages (covering not all of the George Webster property) securing loans in the aggregate amount of $12,000.
On June 28th, 1944, Mr. Fisher conveyed the portion of the George Webster property to one Dora Wexler, subject to the two mortgages upon which there was then due $11,850, which the grantee assumed, and subject to the continued maintenance of the party wall and other easements essential or advantageous to the Sarah Webster property then owned by him. The purchase price is said to have approximated $13,200.
Two years later the executors presented to the surrogate an account to which the complainant in this cause interposed exceptions criticising, inter alia, the payment by the executors of a broker's commission for the sale of the George Webster property and their failure to account for and restore to the estate the alleged monetary profit achieved by their proctor, Mr. Fisher, and also the value of the portion of the property with the associated easements which he has retained.
Before the Hunterdon County Orphans Court undertook the consideration of the exceptions to the account, this court upon the application of the complainant resolved to assume supervision and jurisdiction of the further administration of the decedent's estate and the testamentary trust, and accordingly to entertain the complainant's bill of complaint. Brown *Page 505 
v. Fidelity Union Trust Co., 128 N.J. Eq. 197; 15 Atl. Rep.
2d 788.
The answers of Mr. Fisher and of the executors-trustees collectively project three cardinal points entirely legalistic in character. They will be identified and adjudicated in rotation.
 I. Is the interest of the complainant too contingent and uncertain to enable it equitably to prosecute this cause?
It is observed that under the seventh article of the testator's will, the complainant is entitled annually to the income of the residuary trust only in a year in which "there has been held in said Church regular church services each and every Sunday morning of the year and * * * regular evening services at least forty Sundays during the said year." The averment that the complainant society has not in any year since the death of the testator held in its church the requisite number of religious services must at the moment be regarded as true. From this factual experience of the past springs the insistence on behalf of the defendant Fisher that it is now extremely improbable that the society will ever in the future conduct in its church the prescribed number of morning and evening sessions.
The testator, however, obviously contemplated the possibility of intermissions. He declared:
"If the said Church shall fail to comply with the terms of this my last will and testament for ten calendar years, then and in such event, I direct that the entire principal herein provided for shall be paid in full to the Southwestern Presbyterian Sanitarium. It is understood that the failure does not have to be ten consecutive years, but if the time arrives when there has (sic) been ten years from the date of my death that the Church has not complied with the terms of this will, then the legacy to them shall be void * * *."
In the consideration of the probabilities whether the legatee will ever become entitled to the beneficial enjoyment of the legacy, the type of the contingent or defeasible interest is significant. *Page 506 144 A.L.R. 770. The intention of the testator must be heeded.Woodbridge v. Bockes, 170 N.Y. 596; 63 N.E. Rep. 362.
While it is to be conceded that there are authorities declaring that a beneficiary cannot maintain a suit against a trustee where his interest is dependent upon a remote contingency unlikely ever to occur, the better equitable rule sustained by ample authority permits the beneficiary upon reasonable cause to invoke the aid of the court properly to secure and preserve the trust estate in obedience to the manifest intention of the settlor. NorthwesternNational Bank and Trust Co. v. Pirich, 215 Minn. 313;9 N.W. Rep. 2d 773; Carson v. Kennerly, 8 Rich. Eq. (S.C.)259; Clark v. Deveaux, 1 S.C. 172; Hunt v. Hunt, 124 Mich. 502; 83 N.W. Rep. 371; Lewin, Trusts (13th ed.) 874; 2 Scotton Trusts 920 §§ 172, 214, 219.4. In the immediate situation this court is not concerned with the asserted termination of the trust, but rather with its present execution and administration.Cf. Roberts v. Michigan Trust Co., 273 Mich. 91;262 N.W. Rep. 744. The termination of the trust is not contingent upon the act of any person or organization other than the complainant itself.
It is perfectly evident that the testator desired his trustees to maintain the corpus of the trust unimpaired until perchance the contingent legacy of income to the complainant should be discarded by the complainant voluntarily or in consequence of the specific delinquencies mentioned in his will. The interest of the complainant in the residuary trust is co-extensive with the obligation of the trustees to retain and preserve the corpus.
It is hazardous to conjecture, much more so to resolve, that the complainant will never be eligible to receive the annual income from the trust in the future. Many commercial, social, fraternal, and religious associations were obliged to suspend their operations and functions during the late economic depression or during the period of the recent war. With a fresh recollection of those abnormal conditions, it is fantastic now to conclude that such organizations and societies will not resume their former activities. Moreover the residuary trust is for a religious or charitable purpose. *Page 507 
The averment that the complainant has at present no recognizable and substantial interest in the decedent's estate is frivolous.
 II.
Do the acknowledged circumstances sustain in any meritorious degree the defense of laches?
I think not. The alleged unlawful transaction to which the complainant's exceptions are addressed occurred in 1944. The executors-trustees submitted their succeeding account on or about October 8th, 1946. The complainant filed its exceptions thereto on November 1st, 1946. A superior grade of diligence on the part of the aggrieved beneficiary would have been unusual.
Assuming that the complainant had immediate knowledge of the conveyances in which Mr. Fisher participated, the inaction of the complainant in the light of the deferred filing of the account would not induce me to bar the right of the beneficiary to attack alleged wrongful conduct committed by defendants in the pursuit of their fiduciary functions. Liberality of time is sanctioned in such cases by the doctrine of laches itself. Bechtold v. Read,49 N.J. Eq. 111; 22 Atl. Rep. 1085; Cf. Hartman v. Hartle,95 N.J. Eq. 123; 122 Atl. Rep. 615; Hawley v. Cramer (Court ofEquity, N.Y., 1825), 4 Cow. 717.
 III.
One clothed in a fiduciary character cannot either directly or indirectly purchase the trust property at his own sale and retain it against the dissent of the cestui que trust. Does this rule envelop in principle the attorney of the fiduciary notwithstanding the transaction was conducted in good faith and the purchase price was reasonably adequate?
This, the third question, is the predominant controversial issue to which the present motion relates. Indeed, it is the *Page 508 
nucleus of the litigation about which all the other disputations are congregated.
The rule that denies to those acting in a fiduciary capacity the privilege of bargaining with themselves for the acquisition of the property entrusted to them is now too inveterate and universally prevalent to be refuted. The basic reasons sustaining the rule are likewise familiar. Only a few sources of explanations of the rule need here be cited: Davoue v.Fanning, 2 Johns. Ch. 254; 4 Kent Com. (12th ed.) 462
§ 438; Scott v. Gamble, 9 N.J. Eq. 218; Romaine v.Hendrickson's Ex'rs, 27 N.J. Eq. 162; affirmed, 28 N.J. Eq. 275; Creveling v. Fritts, 34 N.J. Eq. 134; Marshall v.Carson, 38 N.J. Eq. 250; Bassett v. Shoemaker, 46 N.J. Eq. 538; 20 Atl. Rep. 52; Hartman v. Hartle, supra; Taylor v.Errion, 137 N.J. Eq. 221; 44 Atl. Rep. 2d 356.
It is remarked that there is no reported decision in our state in which this salutary rule has been applied to attorneys, proctors, and solicitors of the fiduciary. See, however, Vaiden
v. Edson, 85 N.J. Eq. 65; 98 Atl. Rep. 635; affirmed, 85 N.J. Eq. 184; 95 Atl. Rep. 980. If there is a famine of such authority at home, there is an abundance of such adjudications in other jurisdictions. Let us migrate with an inquisitive disposition of mind.
In Hawley v. Cramer, supra, it is asserted that the inhibition against purchases of the assets of the estate by the attorney of the fiduciary was embodied in the Roman law, the Macedonian Decree of the civil law, and the Civil Code of France.
Lord Chancellor Eldon in Ex parte James, 8 Ves. Jun. 337;32 Eng. Rep. 385, stated: "As to the solicitor, if there is any utility in applying the principle against the assignee (under a commission of bankruptcy), the application as against the solicitor is more loudly called for," and "if the principle is right as to the assignee under the commission, a fortiori it is necessary to adhere to it in the case of the solicitor." I recall that the decision of Lord Eldon was cited with approval in this court in 536 Broad St. Corp. v. Valco Mortgage Co., Inc.,135 N.J. Eq. 361; 38 Atl. Rep. 2d 903; affirmed, 138 N.J. Eq. 431; 48 Atl. Rep. 2d 191. *Page 509 
The Supreme Court of Illinois (1920) in Shearman v. Cooper,294 Ill. 314; 128 N.E. Rep. 559, announced: "Public policy will not permit any person occupying the position of attorney, or any other fiduciary relation to place himself where his personal interest, or that of any other person he is undertaking to represent, will conflict with the interest of the person or persons to whom he owes the duty of absolute good faith. In this state administrators, executors, or other persons occupying a fiduciary relation cannot sell to themselves, property held by them in a fiduciary capacity. This being so, the same sound principle of justice and public policy requires that the attorney for the administrator, executor, or other trustee shall not be permitted, when so acting, to purchase the property himself."
From the opinion of the Supreme Court of Wisconsin in O'Dell
v. Rogers, 44 Wis. 136, the following observation is expressed: "Sales made by trustees and executors to their own attorney under any circumstances, are held to be even more improper than if made to themselves, for the reason that they are supposed to be made under the influence, if not pressure of legal advice, and induced by confidential relations which ought to be above suspicion."
Moving to Minnesota, we hear its court declaring in In reRobbins' Estate, 94 Minn. 433; 103 N.W. Rep. 217: "The only question which we deem it necessary to consider on this appeal is whether the attorney occupies such a position with reference to the administrator and the estate that he was prohibited from profiting by the purchase and sale of the life estate. * * * No distinction can be drawn between the administrator as the trustee of the estate, and his attorney. The attorney is simply the representative or the agent, and the administrator the principal."
In Arkansas the Supreme Court addressed the subject in West
v. Waddell, 33 Ark. 575: "Doswell Jones were purchasers at the sale in good faith. There is no indication that they were influenced by any improper motives, or sought any advantages over other bidders, or had any fraudulent intent. The proof shows that they bought for themselves alone and that the administrator had no interest in their purchase. *Page 510 
Notwithstanding this, the question arises, whether they stood in such position with regard to the property and the administrator, as, upon grounds of public policy, to be competent to purchase.
"They were not the attorneys of the administrators at the time of the first settlement, nor until the application for a sale of the lands was made to the Probate Court. They were then retained and procured the order of sale. They probably made the report in his behalf and procured the order of confirmation. They do not appear to have taken any part in the appraisement, or other preliminary matters in pais. One of them attended the sale and bought in fair competition with other bidders. It is not pretended that any fraudulent means were used to discourage attendance upon the sale or to suppress competition. In short, there is no proof of actual fraud, nor is there any reason to suspect that they intended anything unfair. If their purchase fails it must be on the sole ground of public policy, irrespective of any intention.
"It has long been the established doctrine of equity that trustees cannot deal with trust property for their own benefit in any manner. It is plain that the administrator could not himself have purchased. The doctrine has been extended to all persons entrusted with the management and direction of sales, in such manner as to impose upon them the duty of taking care that the property may be sold to the best advantage for all concerned. They cannot purchase at all, however fair their intentions. As purchasers their interests would conflict with their duties, and the courts of equity, regarding the weakness of ordinary men, take from them all temptations by rendering them incapable of purchasing at all.
"This court has, very recently applied this doctrine to the case of an attorney. After a careful examination of numerous authorities it was held to be a well settled principle that no one can be permitted to purchase an interest, when he has a duty to perform that is inconsistent with the character of a purchaser; quoting the remark of Lord Thurlow in Hall v.Hallett, 1 Cox 134, that `no attorney can be permitted to buy in things in a course of litigation, of which litigation he has the management. This the policy of Justice will not *Page 511 
endure.' (See Wright, Exr., v. Walker et al., 30 Ark. 44, and authorities cited.)
"The application of the principle to this case is clear. It was the duty of the administrator to sell the lands to the best advantage. It was the duty of his attorney to advise and aid him to that end. They were paid by the estate. Their interest as purchasers would have prompted many men in that position, to use means to depress the price. Although there is not the slightest ground to suspect that they did so, or wished to do so, yet the policy must be preserved, of forbidding persons in that position from purchasing at all. They should have been held as trustees of the estate."
The Supreme Court of Ohio in Armstrong v. Huston, 8 OhioReports (Hammond) 552, expressed its conviction: "The application of this doctrine to trustees, executors, attorneys, and agents, is familiar in all the books. A majority of the court unite in the opinion, that the principle of exclusion attaches to every person, to whose integrity and judgment is committed the execution of any step needful in making the sale.
"Where the law creates fiduciary relations, it seeks to prevent the abuse of confidence, by insuring the disinterestedness of its agents. It holds the relations of judge and party, of buyer and seller, to be entirely inconsistent. The temptation to abuse power for selfish purposes is so great, that nothing less than that incapacity is effectual, and thus a disqualification is wrought by the mere necessity of the case. Fullness of price, absence of fraud, and fairness of purchase are not sufficient to countervail this rule of policy. * * *"
Consulting the federal adjudications, not ignoring Jackson v.Smith, 254 U.S. 586; 41 Sup. Ct. 200; 65 L.Ed. 418; Magruder v.Drury, 235 U.S. 106; 35 Sup. Ct. 77; 59 L.Ed. 151; Wormley v.Wormley, 8 Wheat. 441, one becomes acquainted with Bruun v.Hanson, 103 Fed. Rep. 2d 685, in which it was resolved: "Bean, as administrator, was a trustee of the property of the estate and there existed between him and the estate and the heirs a fiduciary relationship. Hanson as attorney for Bean sustains the same relation." See, also, In re Standard Commercial TobaccoCo., Inc., 34 F. Supp. 304. *Page 512 
I incline in these cases to quote the language of Mr. Justice Cardozo, then Chief-Justice of the Court of Appeals of New York, in Meinhard v. Salmon, 249 N.Y. 458, 464; 164 N.E. Rep. 545;62 A.L.R. 1: "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive is then the standard of the behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the `disintegrating erosion' of particular exceptions. * * * Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court."
I have culled the foregoing excerpts from the available authorities because they typify the footprints of all the courts that have approached a consideration of the subject.
The following cases sustaining an identical conclusion will be found to be interesting: Whitcomb v. Minchin, 5 Madd. 91;56 Eng. Rep. 830; Martinson v. Clowes (1860), 21 Chan D. 857;Hall v. Hallett (1784), 1 Cox 134; Torrey Gilbert v.The Bank of Orleans Clark (N.Y., 1842), 9 Paige 649;
affirmed, 7 Hill 260; Terwilliger v. Brown, 44 N.Y. 237; DeVaughn v. Griffith, 149 Ga. 697; 101 S.E. Rep. 794; In re TheTaylor Orphan Asylum, 36 Wis. 534; Mills v. Mills,26 Conn. 213; Cook v. Berlin Woolen Mill Co., 43 Wis. 433; Buckles v.Lafferty's Legatees, 41 Va. 292.
It must not be forgotten that if the executors and trustees of a decedent's estate assume the fiduciary duty to represent and defend the interests of all beneficiaries, then their chosen proctors and attorneys, retained to aid them in that pursuit, accept precisely the same obligatory fidelity to those having an interest in the administration of the estate. Mr. Fisher, as proctor for the executors and trustees, occupied as well the relation of an attorney obliged to protect the interests of all the beneficiaries of the testator's will, including the interests *Page 513 
of the complainant. The rule is indeed scrupulous and rigid, but I subscribe to the convictions of Mr. Justice Cordozo that "only by the uncompromising rigidity has the rule of undivided loyalty been maintained against disintegrating erosion." Wendt v.Fischer, 243 N.Y. 439; 154 N.E. Rep. 303.
An executor or trustee cannot make a valid sale to his wife,Bassett v. Shoemaker, supra; Hartman v. Hartle, supra; nor to his son, Culver v. Culver, 11 N.J. Eq. 215. An executrix cannot sell to her husband. Scott v. Gamble, supra. Can it be conjectured that a sale by such a representative to his attorney is distinguishable in principle?
The executors-trustees and Mr. Fisher aver that the conveyance here implicated was valid and lawful because it was negotiated and consummated between them with the utmost good faith and with an absence of concealment or suppression of any fact within the knowledge of Mr. Fisher which could have improperly influenced the executors-trustees.
Such is undoubtedly an epitomized statement of the rule ordinarily to be applied to dealings between attorney and client and principal and agent. Gibson v. Jeyes, 6 Ves. 266; Ludly'sTrustees v. Peard, 55 L.J. (N.S.) Ch. Div. 884; Condit v.Blackwell, 22 N.J. Eq. 481; Dunn v. Dunn, 42 N.J. Eq. 431;7 Atl. Rep. 842; Le Gendre v. Byrnes, 44 N.J. Eq. 372;14 Atl. Rep. 621; Crocheron v. Savage, 75 N.J. Eq. 589;73 Atl. Rep. 33; Proff v. Shirvanian, 110 N.J. Eq. 639; 160 Atl. Rep. 844;Schenck v. Davis, 134 N.J. Eq. 375; 35 Atl. Rep. 2d 681;Shoup v. Dowsey, 134 N.J. Eq. 440; 36 Atl. Rep. 2d 66.
However, it must be noticed that in all the cases in which the last-mentioned rule has been enunciated, the client or principal was acting in his or her own personal and individual right and not in a fiduciary capacity representative of the interests of others. The distinction is discernible and significant. It must be realized that in the present case the cestui, a party in interest, has neither consented to nor ratified the sale.
Tersely stated, the incapacity of the attorney of the executor or trustee to become a purchaser of the assets of the estate without the full knowledge and consent of all parties in *Page 514 interest rests upon the ground of public policy. The fairness and adequacy of the purchase price, and the bona fides or malafides of the transaction are wholly immaterial. Mulford v.Bowen, 9 N.J. Eq. 797; Culver v. Culver, supra; Creveling v.Fritts, supra; Bassett v. Shoemaker, supra.
The inexorable character of the rule "is grounded in sound morals and is reflected in the supplicating words of the Lord's Prayer, `Lead us not into temptation.'" Shanley's Estate v.Fidelity Union Trust Co., 108 N.J. Eq. 564; 157 Atl. Rep. 160.
I have not been supplied with any cogent and persuasive reason why the courts of our state should constrict the scope and amplitude of the rule and thus depart from that which has survived so long in the jurisprudence of other jurisdictions.
Orders will be advised striking out the answer of the executors-trustees and that of the defendant Fisher.